CITY OF EAST ST. LOUIS, FOR USE, ETC.,

v.

ALEXANDER FLANNIGAN ET AL.

*Municipal Corporations—Indebtedness—Constitutional Limit—Contract to Furnish Gas—Warrants Drawn against Particular Fund—Treasurer—Action on Official Bond of—Parties.*

1. Although municipal corporations can not become indebted in any manner or for any purpose beyond the constitutional limit, they may, for the purpose of paying current expenses, anticipate the collection of revenues already levied and appropriated to the payment of such expenses. Warrants drawn upon the treasury in payment of such expenses must be payable out of particular funds so appropriated, the corporation incurring no liability whatever.

2. Where there is an agreement to furnish gas for street lights, payment to be made monthly as the gas is furnished, no present liability is created, and warrants drawn for gas furnished after the levy against a fund appropriated for the purpose, are valid.

3. A municipal corporation may maintain an action, for the use of a person injured, on the official bond of its Treasurer, for a refusal to pay warrants drawn against a particular fund in his custody.

[Opinion filed May 5, 1888.]

IN ERROR to the Circuit Court of St. Clair County; the Hon. AMOS WATTS, Judge, presiding.

April 20, 1886, the defendant in error, Flannigan, was appointed City Treasurer of the City of East St. Louis, and on the same day executed his official bond, with his co-defendants as sureties, in the sum of $100,000, which was duly approved by the City Council.

This suit is brought upon that bond by the obligee therein, the city, for the use of one W. D. Griswold, and five breaches of the condition of the bond were assigned, substantially as follows: "For non-payment of five several city warrants drawn on him by order of the City Council in favor of W. D. Griswold, in payment of gas furnished the city for the months

of July, August, September, October and November, 1886."
The assignments are substantially identical in terms, except as
to the dates, serial numbers and amounts of the warrants, and
the months for which they are drawn.   They recite that after
the appointment, etc., of said Flannigan as Treasurer as afore-
said, the fiscal year of said city for the year 1886 commenced
on the first day of July, 1886, and that thereupon the City
Council of said city duly made its appropriation ordinance for
said year, as required by law, in the sum of $113,056, of
which amount $7,500 was specially appropriated for lighting
the streets of said city, and that afterward, in September fol-
lowing, the Council duly levied upon the taxable property in
said city a tax amounting to the sum of $64,129, of which
amount, also, $7,500 were specially appropriated and set
aside for lighting said streets, and that said tax was duly ex-
tended, etc., according to law.   That at the beginning of said
fiscal year said city was, and ever since that time has been,
indebted beyond the constitutional limit, and could con-
tract no further indebtedness.   That said city contracted
with said Griswold to light the streets of said city during
said year for a certain price agreed upon; that said light-
ing was a necessary and ordinary expense of the city; that
the latter had no money in the treasury to defray the same,
and that the city promised Griswold to issue to him, in
payment for such lighting, its warrants to be drawn against
and in anticipation of said taxes so appropriated and levied
for lighting said streets; that said Griswold did light said
streets in pursuance of said contract, and tendered his bills
therefor, which were allowed by the Council, and that there-
upon the Council, having provided that warrants might be
drawn against said taxes, issued to said Griswold its tax
warrants for the amounts so allowed him, in payment of
such bills; that said warrants were duly signed by the Mayor,
countersigned by the City Clerk, and sealed with the seal of
the city, and were specially drawn against said taxes so levied
and appropriated for lighting said streets and were payable
out of said appropriation only.   (The warrants are set out *in
haec verba* in the declaration and are four for $509.85, and the

fifth for $554.15.)    That there was also during all of said year
an ordinance of said city which provided that all warrants
should be drawn against a particular fund, and should be paid
by the Treasurer on presentation, if there be any fund in the
treasury belonging to such fund, and which also made it the
duty of the Treasurer to keep a separate account of each fund
or appropriation, and on receiving any money from any tax
levy, to credit each fund with its *pro rata* share, and which
further made it his duty to pay out the money of the city
coming into his hands as aforesaid on orders of the City Coun-
cil, signed by the Mayor, countersigned by the Clerk, and
signed with the city seal.    That since the issuing of said war-
rants there has come to the hands of said Flannigan, as such
Treasurer, the sum of $18,637, collected of said tax levy of
said city for the year 1886, and that the *pro rata* share there-
of specially appropriated for street lighting is $2,179.    That
said Griswold, before said Flannigan received said money,
gave notice to the latter and presented to him his warrants;
and that after said Flannigan received said money, he again
presented said warrants and demanded payment thereof; and
that said Flannigan, although he had in his hands a sufficient
sum, the proceeds of said tax levy, and specially appropriated
for lighting said streets, to pay said warrants, refused and
failed to pay the same, and that he has wilfully misapplied
said money for other purposes and converted the same to his
own use.

A general demurrer was interposed to the declaration which
the court sustained, and the plaintiff electing to abide by its
pleadings, judgment for the defendant went in bar of the action,
and the city sued out this writ of error.

Mr. W. C. KUEFFNER, for plaintiff in error.

In this case, as the city was indebted beyond the constitu-
tional limit, the only remedy is against the officer having the
funds in charge.

With regard to municipal corporations indebted beyond
the constitutional limit, which issue warrants in payment of
services rendered, the Supreme Court has construed the legal
effect of such warrants to be as follows:

"Where a warrant or order, payable from a specific appropriation or tax, levied but not yet collected, is accepted for services rendered or to be rendered, or for materials furnished, so that there is, in fact, but the exchange of one thing for another, the duty remains for the proper officer to collect and pay over the tax in accordance with the appropriation; but obviously, for any failure in that regard, the remedy must be against the officer, and not against the corporation, for otherwise a contingent debt would in this way be incurred by the corporation." City of Springfield v. Edwards, 84 Ill. 634.

"When a city is indebted beyond the constitutional limit, and it hires labor, as it can incur no debt, it may, in thus hiring or purchasing, agree to transfer so much of the tax thus levied as will pay for the same, and if the agreement is not so expressed in terms, the law will imply one to that effect." Law v. The People ex rel., 87 Ill. 385.

As it was the duty of the City Treasurer, under the law and the city ordinance, to pay these warrants out of the money in his hands specially levied and appropriated for their payment, a suit on his bond will lie for the violation of this duty for the use of the party injured.

"Whenever a functionary of any grade is endowed by law or ordinance with powers involving the receipt or custody of public money or property, or the liberty or property of private persons, that officer, as a rule, is bound to give security that he will faithfully discharge the duties which the law imposes upon him. The bond is universally considered the great safeguard of the public interest as well as the surest remedy of private grievances." Murfree on Official Bonds, Sec. 310.

"The laws which provide for the execution of bonds similar to the one before us, do not require them for the purpose of protecting the rights of the State alone. They are also designed to secure the faithful performance of official duties, in the discharge of which individuals and corporations have a deep interest, and, therefore, they should have the privilege of suing on such bonds for injuries sustained by them, through the negligence and malconduct of the officer." Ib. Sec. 323 ; State, for use, etc., v. Norwood, 12 Md. 177, 194.

" The law, in requiring an official bond, contemplates it as security for those whose rights it commits in certain cases to the officer." Murfree on Official Bonds, Sec. 486.

The official bond of a County Clerk, made payable to "the People of the State of Illinois," may be sued on for the use of the parties injured, although the statute contains no special provision that suit may be brought in that manner. Satterfield v. The People, for use, etc., 104 Ill. 449.

" It is sufficient if the plaintiff had the legal interest. * * * If he has parted with the beneficial interest, the equitable assignee has the undoubted right to sue in his own name to enforce the liability. * * * It is a matter of no importance whether the plaintiff had any substantial interests in the subject-matter of this proceeding, or whether it was commenced with his knowledge or by his consent." Bryant et al. v. Dana, 3 Gilm. 349.

" The suit is in the name of the proper person, and it makes no difference to the defendant for whose benefit it is brought. As was said in the case of McHenry v. Ridgley, the court will not inquire whether the plaintiff sues for himself, or as trustee for some other person. It is sufficient that he has the legal interest." Chadsay v. Lewis, 1 Gilm. 159.

' The words, for the use of Maurice L. Whiteside, add nothing to or detract nothing from the right of recovery. Whiteside is not the legal, but the beneficial plaintiff. All after the name of the real plaintiff may be rejected as surplusage. When a recovery is had, the question may then arise whether the People or Whiteside shall have the money. I. & St. L. R. R. Co. v. The People, 91 Ill. 455.

Messrs. R. A. HALBERT and TURNER & HOLDER, for defendants in error.

The supposed contract set out in the declaration is void, and the city had no power to appropriate money or levy taxes to carry it out. Howell v. City of Peoria, 90 Ill. 104. It was against public policy for Griswold and the city to make an agreement for the lighting of the city for one year, the city being indebted beyond the constitutional limit, no tax having been levied and not even an appropriation having been made

for the purpose of lighting the city. There was no tax levy in process of collection to be anticipated; no tax levied; no estimate made of the current expenses of the city for the fiscal year upon which a tax levy could be based. This is not the condition suggested by the Supreme Court in City of Springfield v. Edwards, 84 Ill. 626; Law v. People, ex rel., 87 Ill. 385.

The proceedings set out in the declaration are clearly in violation of the Constitution, its letter and spirit.

It was the intention of the people in adopting the Constitution to prevent the reckless extravagance of city governments which had theretofore prevailed, and to cut off all expenses unless the city had the money in its treasury with which to pay, or a tax levy in process of collection which could be assigned to the persons rendering services, at the time the services were rendered.

This supposed contract being void—the city and Griswold both being parties thereto—neither the city nor Griswold can enforce it directly or indirectly, in law or in equity. Penn v. Bornman, 102 Ill. 523.

The city, then, and the person for whose use the suit is brought, were manifestly and knowingly engaged in violating or evading the organic law of the land; the enforcement of such contract, the collection of the money stipulated in such contract to be paid, from the sureties of the Treasurer, would undoubtedly encourage future evasions of the law, and the courts will not assist either the city or Griswold in carrying out such void contract. On this ground alone the demurrer was properly sustained by the Circuit Court.

The liabilities of sureties on official bonds are limited by their terms, not only as to what the sureties are liable for, but also to whom they are responsible. Third persons generally can have no beneficial interest in a bond of this character, unless a provision to that effect is embodied in the statute which authorizes the bond. Murfree on Official Bonds, Sec. 184; Brown v. Phipps, 6 Smed. & M. 57.

A breach of the bond must be alleged and proved as to the obligor. Murfree on Official Bonds, Sec. 468, and notes thereto.

And this is peculiarly so as to bonds given by city officers to secure the faithful performance of their duties to the city. Most of the powers granted to a city are purely local, and not governmental in their character.   This is so as to the care and control of sewers, water works, public buildings, gas works, etc.   Their contracts in respect thereto are not made by the municipal corporation by virtue of its local sovereignty, but in its capacity of a private corporation.   Western Saving Fund · Society v Philadelphia, 31 Pa. St. 183; Wheeler v. Philadelphia, 77 Pa. St. 354; People v. Hurlbut, 24 Mich. 103; Board of Park Commissioners v. Detroit, 28 Mich. 237; Small v. Danville, 51 Mo. 361; Oliver v. Worcester, 102 Mass. 49; San Francisco Gas Co. v. San Francisco, 9 Cal. 453; Western College v. Cleveland, 12 Ohio N. S. 375; State v. Tappan, 29 Wis. 664; Atkins v. Randolph, 31 Vt. 26; People v. Mayor of Chicago, 51 Ill. 30 ; Galena v. Corwith, 48 Ill. 423; DeVoss v. Richmond, 18 Gratt. 338; Lloyd v. Mayor of New York, 5 N. Y. 374.

PILLSBURY, J.   Two principal points are made against the right of the plaintiff in error to maintain this action for the use of Griswold:   First, that as the contract was entered into before the tax was actually levied, it was void as creating an indebtedness against the city when it was already indebted beyond the constitutional limit of five per cent. upon the assessment of the previous year; and second, that the bond in suit is not for the benefit of individuals but to secure the city, and as the city had discharged itself from all liability by issuing the warrants upon this special fund it has not been damnified, and therefore no breach of the bond has accrued upon which any one can hold the sureties.

The constitutional provision relied upon is the 12th section of Art. 9, and is this:  " No county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness."

This provision has frequently been construed by the Supreme Court and its effect upon "temporary loans," "certificates of indebtedness" and "contracts creating liabilities in the future," passed upon and determined, and it will only be necessary for us to ascertain the law thus declared and apply it to the facts of this case as shown by the averments of the declaration.

In the City of Springfield v. Edwards, 84 Ill. 626, a bill was filed by a taxpayer to enjoin the city from incurring indebtedness and levying and collecting taxes in violation of the charter and of the constitution. It appeared in that case that the city, although indebted beyond the constitutional limit, had been borrowing money to pay current expenses, and had issued warrants made payable at a future day with interest, and had also issued bonds for some of the loans thus made.

It was contended in that case by the city that when liabilities are created and appropriations are made which are within the limits of the revenue accruing to meet them, they are not debts within the meaning of the prohibition of the constitution, and that temporary loans are not, when within the limit of the revenue expected to be realized. Authorities were referred to from other States bearing upon this contention and the rule deduced from them by our court is thus stated: "These cases maintain the doctrine that the revenues may be appropriated in anticipation of their receipt, as effectually as when actually in the treasury; that the appropriation of moneys, when received, meets the services as they are rendered, thus discharging the liabilities as they arise, or rather anticipating and preventing their existence."

The court, then, after commenting upon the language of the provision of the Constitution above quoted, and considering what kinds of indebtedness are within its terms, announces its conclusion as to the rule that should obtain in this State as follows:

" In this view, we are only prepared to yield our assent to the rule recognized by the authorities referred to, with these qualifications: First, the tax appropriated must, at the time, be actually levied; second, by the legal effect of the contract

City of East St. Louis v. Flannigan.

between the corporation and the individual, made at the time of the appropriation, the appropriation and issuing and accepting of a warrant or order on the treasury for its payment, must operate to prevent any liability to accrue on the contract against the corporation.

"The principle, as we understand, is, that there is in such case no debt, because one thing is simply given and accepted in exchange for another. When the appropriation is made and the warrant or order on the treasury for its payment is issued and accepted, the transaction is closed on the part of the corporation, leaving no future obligation, either absolute or contingent upon it, whereby its debt may be increased.

"But until a tax is levied, there is nothing in existence which can be exchanged, and an obligation to levy a tax in the future, for the benefit of a particular individual, necessarily implies the existence of a present debt in favor of the individual against the corporation, which he is lawfully entitled to have paid by the levy. If the making of the appropriation and issuing and accepting a warrant for its payment does not have the effect of relieving the corporation of all liability, or, in other words, if it incurs any liability thereby, it must manifestly incur, either absolutely or contingently, a debt.

"Where a warrant or order, payable from a specific appropriation of a tax levied but not yet collected, is accepted in exchange for services rendered or to be rendered, or for materials furnished, so that there is, in fact, but the exchange of one thing for another, the duty remains for the proper officers to collect and pay over the tax in accordance with the appropriation; but obviously, for any failure in that regard, the remedy must be against the officers and not against the corporation, for otherwise a contingent debt would, in this way, be incurred by the corporation."

Again, in Law v. The People, 87 Ill. 385, the question came before the Supreme Court, arising, however, upon the right of the City of Chicago to issue certificates of indebtedness to be paid out of the tax levy of the year for current expenses, and it was held that such certificates were void, as

creating an additional indebtedness to be paid in the future, and that the case was within the principle of the Edwards case and governed by it. For the purpose of showing how the court construed the Edwards case we quote from the opinion in the Law case.

" In the case of The City of Springfield v. Edwards, 84 Ill. 626, we pointed out the manner in which revenue already levied and to be collected might be anticipated without the city becoming indebted, or violating the constitutional or statutory prohibition, and the questions presented by this record are essentially the same as in that, and must be governed by that case. In that case it was held that the tax upon which the warrant is drawn must, at the time, be actually levied, and the delivery of the warrant on the treasury must have the legal effect and operate as a contract between the corporation and the person receiving the warrant, that the city shall thereby incur no liability whatever. In such a case there is no debt incurred, because the warrant on the Treasurer is received for the work done or the articles furnished." The doctrine of these cases was re-affirmed in Fuller v. The City of Chicago, 89 Ill. 282. Howell v. City of Peoria, 90 Ill. 104, was a case where the city had contracted with Dean Brothers to build and set up in the city certain water works pumps for the sum of $11,000, one fourth to be paid down and the balance in equal payments of $2,750, payable at different times in the future, with eight per cent. interest, and to secure the deferred payments the city was to give its three promissory notes. At the suit of a taxpayer the court held the contract invalid as increasing the indebtedness of the city, it being already indebted beyond the constitutional limit.

In the case of this same plaintiff in error against the East St. Louis Gas Light and Coke Company, 98 Ill. 415, the action was brought by the gas company to recover certain monthly installments due it for gas furnished for lighting the streets of the city. It appeared in that case that in 1874 the city entered into a contract with the gas company to erect lamp posts and extend its street main pipes so as to accommodate the city' and to furnish gas at a certain price per lamp per year, to be

City of East St. Louis v. Flannigan.

paid in monthly installments. The contract was to continue for thirty years from October 1, 1874.

It was insisted by the city, in that case, as one objection to the contract, that by it an indebtedness of $211,200 was created against the city, it requiring that sum to pay for the gas furnished under it for the thirty years it was to run. The previous indebtedness of the city was only $20,000 less than the limit allowed by the Constitution. In answer to this contention the court says: "The contract was for the furnishing of an article for nightly consumption by the city during a period of thirty years, fixing the price at which the article should be furnished. There was no indebtedness in advance of anything being furnished, but indebtedness arose as gas should have been furnished along from night to night during the period of thirty years. The contract provides for the payment monthly, at the end of each month, the amount that became due for the month then ended. When the company has furnished the gas for a certain month, then there is a liability—an indebtedness arises—and not before, as we conceive. Hence the amounts that might become due and payable under the contract in future years, did not constitute a debt against the city at the time of the entering into the contract, within the meaning of the Constitution."

The distinction between this and the Howell case is very manifest. Here no liability is incurred until the article is furnished from time to time, the consideration being received daily during the entire term of the contract; consequently the aggregate amount that might have to be paid under the contract, if complied with, is not to be taken as creating the indebtedness at the inception of the contract, while in Howell's case the entire consideration was to be received at once, and to be paid for in the future, thus clearly adding to the indebtedness of the city.

From these decisions we deem the following propositions to be fully established:

First. That a municipal corporation can not become indebted in any manner or for any purpose beyond the constitutional limit.

Second.  No contract, certificate of indebtedness, nor temporary loan, can be valid if it has the effect of increasing the present municipal indebtedness beyond such limit.

Third.  Municipalities may, for the purpose of paying their current expenses, anticipate the collection of the revenue appropriated to the payment of such expenses by observing the following requirements:

1st.  The tax appropriated must at the time be actually levied.

2d.  The warrant drawn upon the treasury in payment of services rendered or articles furnished, must be drawn payable out of this particular fund, and must operate as a contract, and have the legal effect, between the corporation and the person receiving the warrant, that the corporation shall incur no liability whatever.

Applying these principles to the case in hand the question made is not difficult of solution.  The City of East St. Louis was, at the time of entering into the contract, indebted beyond the constitutional limit, and has ever since remained so, as alleged in the declaration and admitted by the demurrer.  As the tax contemplated to be levied for lighting the streets had not been levied at the time of making the contract, the contract on the part of the city can have no greater force than an agreement thereafter to levy such tax for the benefit of the other contracting party, which can not be done by the city under the authorities of Springfield v. Edwards; and Law v. The People, *supra*.  The tax not being levied, there was nothing to give in exchange for the gas furnished, and manifestly, if it agreed to pay monthly for the gas furnished for the preceding month, a debt was created against the city within the inhibition of the Constitution.

As was said in East St. Louis v. E. St. L. G. L. & C. Co., *supra*, "when the company has furnished the gas for a certain month, then there is a liability—an indebtedness arises—and not before."

It is averred in the declaration that Griswold, after the end of the month of July, rendered his bill for gas furnished during that month, amounting to $509.35, which bill was allowed,

City of East St. Louis v. Flannigan.

by the proper authorities of the city and ordered paid, and that a warrant was issued for that sum payable out of the fund appropriated and levied for street lighting purposes. This warrant was issued September 20th, a date subsequent to the date of the passage of the ordinance levying the taxes.

It is urged that as it was agreed in the contract that Griswold would look alone to the fund to be thereafter appropriated and levied, for his payment, no debt was thereby created against the city for the gas furnished thereunder prior to the levy of the taxes.   As we have seen, the contract was entered into before any taxes were levied to meet the respective monthly payments, and by it the city promised to appropriate a sufficient amount of revenue to be derived from taxation to provide for the liquidation of those monthly bills and to issue to Griswold its warrants against such fund.

Now it is evident that if the city had failed either to make the appropriation or levy the tax, Griswold could have maintained an action to recover for gas furnished, against the city, except for the constitutional provision preventing it from becoming further indebted.

If the city should violate its contract with him to pay out of a particular fund to be raised through its action by taxation, no reason is perceived why he might not sue and recover against the city generally.   This contract, it seems to us, created a present indebtedness at the end of each month, but by agreement, it is to be discharged in a particular way; and if this view be correct, this indebtedness is as clearly within the constitutional prohibition as though it was to be paid generally.   The contingency upon which it was to be paid out of a particular fund depended upon the further action of the city.   If it neglected to perform its part of the contract the specified means of payment would fail and it would become a general indebtedness against the city.

Our conclusion upon that branch of the case is, that the warrants drawn upon the treasury in payment of the gas furnished prior to the actual levy of the tax were illegal and void.   Those, however, issued in payment for the gas furnished after the tax levy, rest upon a different basis.

It was held in the Gas Light and Coke Company case, *supra*, that the city had the general power to enter into contracts for the furnishing of gas for city purposes; that such contracts were within the scope of its authority, and, having such general power over the subject-matter of the contracts, the courts should not destroy the contracts made by the parties further than some good reason requires.

There can be no serious ground for contention that, if this contract had been mad after the passage of the general appropriation bill wherein the fund for lighting streets was set aside and specified, and the tax levy had been actually made, it would have been free from legal objection, as it would fall within all the limitations and conditions of the Constitution as construed by the court in the decisions referred to above. The city would then have had something to exchange for the gas furnished.

Having, then, this general power over the subject in question, there seems to be no good reason for holding that if, after such tax levy was actually made, Griswold furnished gas, which was used and accepted by the city, the city might not pay for it by warrants drawn against this particular fund, and in determining the amount to be paid therefor, should adopt the contract price for it. This view, we think, is fully supported by the last case above cited, where substantially the same question was raised, and decided in favor of the gas company.

The second question raised upon this record is whether the city can support an action upon the bond in suit for the use of Griswold. The argument is that, as the city is entirely discharged and freed from all obligation to him when it delivers to him the warrant, it has no further interest in the matter; that Griswold must look to the Treasurer alone for his payment, and that an action for money had and received against him is the only remedy left to Griswold.

To this proposition we can not give our unqualified assent. It may be, perhaps, that such action would be against Flannigan as Treasurer, but we can not concede that such remedy is exclusive.

The condition of his bond is, that he will promptly account

for and turn over to his successor, or other person designated to receive the same, all moneys, etc., coming to his hands, and shall well and truly perform the duties of the office; then the bond is to be void, otherwise to remain in full force, etc.

It is averred in the declaration that "said Griswold gave notice to said Flannigan, while he was such Treasurer, and before said money came to the hands of said Flannigan as aforesaid, that he, the said Griswold, would be entitled to said money so to be collected for said fund appropriated for lighting said streets, under his said contract with said city, and presented to him his said warrant drawn against said appropriation, as aforesaid; and that said Griswold, after said money came to the hands of said Flannigan, and while the latter was still such Treasurer, again presented said warrant to said Flannigan, as such Treasurer, and demanded payment thereof."

The declaration further avers that there came into his hands as such Treasurer over $2,000, appropriated and collected for the purpose of paying for lighting the streets, against which fund these warrants were drawn. Now, as we understand the law this $2,000 was none the less a public fund in the hands of the Treasurer, because it was appropriated, levied and collected as a special fund to be applied in the discharge of current expenses of the city for a special purpose—the lighting of the streets. It was as much the duty of the Treasurer under the law and ordinance of the city to pay legal warrants drawn upon and against this fund as it was to pay general warrants from the general funds of the city.

The levy and collection of this fund was under the general power of the city, and the whole proceedings were had by the same officers and under the same legal authority and power as though it had not by such warrants been assigned to Griswold.

The taxes were levied by competent authority, collected in the usual course and put into the hands of the Treasurer to be paid out upon the legal warrants of the City Council. This he refuses to do; and while the city has not and can not sustain any substantial damages, as no general liability is created, as we have seen, by anticipating the collection of the revenue assessed for a special purpose, it clearly has a right

of action against the Treasurer and his sureties for his failure to perform his official duty in paying out the funds in his hands accordingly as he should be directed upon warrants of the city legally drawn upon him, when he has in his hands moneys regularly and legally appropriated to the payment of such warrants.

This suit is brought by the city, the obligee in the bond, and the party in which the right of action is vested, and the breach alleged is the failure by the Treasurer to pay a legal warrant drawn against a special fund collected in the regular course of law to meet the expenses of the city in this regard.

The contention that Griswold must sue the city first and obtain judgment is without force. The city has done all that it is required to do. It has levied the tax and it has been collected in the usual course of proceedings under the revenue laws. It has been received by the Treasurer for a specified purpose and it has been legally drawn against. The duty of the Treasurer is to pay such legal warrants, and the bond in suit is his official pledge that he will perform such duty.

We think this bond is held by the city as a further security that the Treasurer will perform all his duties in paying out the funds in his hands to those to whom the City Council, according to the statutes and ordinances of the city, direct payment to be made, and if the Treasurer refuses to comply with his duty, when the means of fulfilling are in his own hands, an action will accrue to the city upon his bond for the use of any party who shows upon the trial that he will be substantially injured by a non-performance of such official duty.

In Murfree on Official Bonds, Sec. 323, it is said: "It is usually provided in statutes authorizing official bonds to be required of state, county or municipal officers, that suits may be brought upon them in the name of the official obligee 'upon the relation,' or 'to the use' of the party injured by the breach of the bond or interested in its enforcement. Whenever, however, this express provision is omitted in the statute itself, the deficiency is supplied by the construction given to such statutes by the courts whenever a proper case for such

a ruling is presented. In a Maryland case (1858) the court held that it was not necessary for a plaintiff, before instituting a suit upon an official bond payable to the State, to obtain the State's permission to do so; and this, although there was in the statute which prescribed the bond no specific provision for making the bond payable to the State, or for giving the party interested the right to sue upon it. The court adds, however, that 'there is no doubt that it is incumbent on the party suing on the bond, to show that he has an interest in it, before he could recover in a regular trial prosecuted to verdict.'

"The *rationale* of official bonds is well expressed by the court in this case. 'The laws which provide for the execution of bonds similar to the one before us, do not require them for the purpose of protecting the rights of the State alone. They are also designed to secure the faithful performance of official duties, in the discharge of which individuals and corporations have a deep interest, and, therefore, they should have the privilege of suing such bonds for injuries sustained by them through the negligence and malconduct of the officers?'"

This doctrine we consider applicable to the bond in suit, and hold that the city can maintain an action upon the bond to recover substantial damages for the use of Griswold, the really injured party, for a failure to pay those warrants really drawn against this particular fund in the Treasurer's hands, as indicated in this opinion.

The demurrer being general to the whole declaration, where some of the breaches assigned are good, should have been overruled and defendant required to plead.

For the reasons stated the judgment will be reversed and the cause remanded for further proceedings.

*Reversed and remanded.*