HENRY FULLER

v.

THE CITY OF CHICAGO et al.

1. MUNICIPAL INDEBTEDNESS—constitutional limitation. A city, whose corporate indebtedness has reached the constitutional and statutory limit of five per cent of the assessed value of property within its limits for taxation, is prohibited from borrowing money and giving evidences of indebtedness therefor, although taxes have been levied to meet their payment, and such evidences are void. The city can not incur corporate indebtedness in anticipation of the collection of taxes levied.

2. SAME—certificates of indebtedness. A certificate that a certain person has advanced a given sum of money to a city to meet a part of the current expenses of the city for a given year for which an appropriation has been made, and that such sum will be paid to him or order on a specified day without grace, with interest, out of taxes actually levied for such fiscal year, and ordering the treasurer to pay the same when due, and charge it to the general appropriation fund, is an evidence of corporate indebtedness, its payment not being limited solely to the taxes to be collected for that fund.

3. SAME—warrant in anticipation of tax levied. A city can not use the taxes levied for one fund for the expenses of another; hence it follows that to anticipate the uncollected taxes of any of the funds, the warrant on the treasurer must be specifically against, and to be paid only out of, the taxes levied for that particular fund. It is not sufficient that the warrant directs the treasurer to charge it to a particular fund.

4. TAXES—payment in evidences of indebtedness. A collector of city taxes has no power, even under an ordinance to that effect, to receive certificates of city indebtedness in payment of such taxes, where such certificates are illegal and void as having been issued in excess of the constitutional limitation of the city indebtedness, and he will be enjoined from so doing.

APPEAL from the Appellate Court of the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and GEO. W. PLEASANTS and J. M. BAILEY, Justices.

Mr. EDWARD ROBY, for the appellant:

1. Power to incur municipal debts includes the power to pledge all the property within the municipality, and to the extent of the pledge destroys the owner's title. Power to pledge

property to the extent of one-tenth its value carries the power to destroy the whole title to the property to realize the sum for which it is pledged. As the trustee of the power exercises it *in invitum,* and against the owner without his consent, he who voluntarily contracts and seeks to profit by the exercise of the power must observe good faith, and see that his contract is within the limit to which the law has committed the owner's property to his destruction.

This is a suit brought by a corporator, against the corporation and its officers, to enjoin them from a violation of his corporate rights.

2.   Any tax-payer may file a bill to enjoin the corporation and its officers from misapplying the money of the corporation. *City of Springfield* v. *Edwards,* 84 Ill. 626; *Colton* v. *Hanchett et al.* 13 id. 615; *Perry* v. *Kinnear,* 42 id. 160; *Marshall* v. *Silliman,* 61 id. 218.

3.   The corporation seeking to exert the powers must be made defendant, and injunction should be granted in this case. *Allen* v. *Turner,* 11 Gray, 436; *Gifford* v. *New Jersey R. R. Co.* 2 Stockton, 174; *New London* v. *Brainard,* 22 Conn. 552; Joyce on Injunc. 726-729; Hilliard on Injunc. 363, sec. 9, ch. xv, secs. 9-11.

4.   The holders of the bonds are not necessary parties. *Marshall* v. *Silliman,* 61 Ill. 218, and cases above cited.

5.   The point of the bill is, that the city of Chicago being indebted to the constitutional limit when the constitution took effect, it had no power, and could not be invested with power, to incur any debt in any manner or for any purpose, and all claims of new debt so voluntarily incurred by the city are void.   Const. of Ill. Art. 9, sec. 10; *Law et al.* v. *The People,* 87 Ill. 385; *City of Springfield* v. *Edwards,* 84 Ill. 626; *Newell* v. *The People,* 3 Seld. 9; *Rodman* v. *Munson,* 13 Barb. 7.

6.   The instruments shown in the bill are the contracts of the city, and not of the officers. *Bowen* v. *Morris,* 2 Taunt. 374; Angell & Ames on Corp. sec. 292. They are promissory

notes of the city, or of the same nature.    1 Daniel on Negotiable Instruments, sec. 430, p. 320; *Kelley* v. *Mayor of Brooklyn,* 4 Hill, 265; *Steele* v. *Davis County,* 2 Greene, Iowa, 469; *Varner* v. *Noblebuogh,* 2 Greenl. 126; *Pease* v. *Cornish,* 19 Me. 193; *Dalrymple* v. *Whittingham,* 26 Vt. 346; 1 Daniel Neg. Ins. 102, sec. 129; p. 100, sec. 128; p. 79, sec. 98; pp. 322, 323, secs. 424-435; *Kingbury* v. *Pettis County,* 48 Mo. 207.

7.    The Federal decisions show that this case does not turn upon irregularities, but the bonds are void and there can be no *bona fide* holder.    *Township of East Oakland* v. *Skinner,* 94 U. S. 255; *Town of South Ottawa* v. *Perkins,* ibid. 260; *McClure* v. *Township of Oxford,* ibid. 429; *County of Randolph* v. *Post,* 93 id. 502; *County of Calloway* v. *Foster,* ibid. 567; *Harshman* v. *Bates County,* 92 id. 569; *Town of Concord* v. *Portsmouth Savings Bank,* ibid. 625; *County of Moultrie* v. *Rockingham Savings Bank,* ibid. 631.

The distinction appears by cases supporting bonds.    None are supported except when it may be gathered from the enactment that the officers of the municipality were invested with *power to decide* whether the conditions have been complied with; that the recital itself is a decision of the fact by the appointed tribunal.    *Commissioners of Douglas County* v. *Bolles,* 94 U. S. 104; *Town of Coloma* v. *Eaves,* 92 id. 484; *Comrs. of Johnson County* v. *January,* 94 id. 202; *Humboldt Township* v. *Long,* 92 id. 642; *Township of Burlington* v. *Beasly,* 94 id. 310; *Comrs. of Johnson County* v. *Thayer,* ibid. 631; *Town of East Lincoln* v. *Davenport,* ibid. 801; *Comrs. of Marion County* v. *Clark,* ibid. 278; *Converse* v. *Fort Scott,* 92 id. 503; *Town of Venice* v. *Murdock,* ibid. 497.

8.    Our case is that of an attorney and constituent.    A corporation is an artificial existence.    A municipal corporation exerts only delegated powers, and those powers must be vested by written law.    The legislature had no power to confer authority to become indebted beyond the limit, and no

power to confer authority to become indebted at all, where the limit had been reached. The limit had been reached by Chicago; therefore the corporation had no power to receive, and the legislature no power to give, authority to the corporation to contract more debt. Therefore no contract to pay more debt exists.

9. The distinction between this case and the municipal bond case, in which the legislature made the officers a special tribunal to ascertain the existence of preliminary facts, whose finding should be conclusive on all courts, is that the Illinois constitution is not a mere directory law, but positive in its prohibitions of delegation of power. Matters of contested application of that law are matters of judicial decision. No tribunal can be invested with power to decide them but the courts. *Rich* v. *Chicago*, 59 Ill. 289; *The People* v. *Maynard*, 14 id. 419; *Hall* v. *Marks*, 34 id. 358; *The People* v. *The Mayor, etc.* 51 id. 30; *Du Page County* v. *Jenks*, 65 id. 282; *Rozier* v. *Fagan*, 46 id. 404.

10. The cases from Missouri, holding that the constitution of that State was only prospective, are not in that respect applicable to the constitution of Illinois, for it is held that the constitutional prohibitions are effectual from the hour of their enactment to extinguish all laws contrary to their letter or spirit. *The People* v. *Maynard*, 14 Ill. 419; *Hills* v. *Chicago*, 60 id. 86; *Webster* v. *Chicago*, 62 id. 302; *Chance* v. *County of Marion*, 64 id. 66; *The People* v. *Rumsey*, ibid. 44; *Alexander County* v. *Myers*, ibid. 39; *The People* v. *McRoberts*, 62 id. 38. The charter of the city is found in Rev. Stat. 1874, p. 211. The only power to become indebted is in art. v, sec. 1, cl. fifth. *Law et al.* v. *The People*, 87 Ill. 385, holds that this does not purport to and could not confer authority on the city to contract debts above the limit. Floyd Acceptances, 7 Wall. 666.

11. There is no provision of law for farming, selling or leasing revenues in Illinois. The collection of revenues

through the usual machinery, may be anticipated by voluntary payment to the taxing corporation, the tax-payer receiving its quittance, which, if presented at the proper time to the collector, will be credited; but if not so presented, will become null and constitute no claim against the corporation.

This is allowed by sec. 116 of the road law, Rev. Stat. 1874, 931, *Comrs. of Highways* v. *Newell,* 80 Ill. 591, and is not allowed by any other statute of the State. It is a power not given to any corporation but the highway commissioners.

12. The thing prohibited, "to become indebted in any manner," is to be understood in the common or ordinary sense. There is no legal contemplation different from that. *Gray* v. *Burnett,* 3 Metc. 522; 2 Jacob's Law Dic. 330; 3 Bac. Abridg. Bouvier's ed. 82. On the construction of the words, "in any manner," see 4 Co. Inst. 48.

13. No tax is regarded by Illinois laws as in the treasury till the money gets there. It is a mere debt or chose in action,—a right to demand, secured or unsecured, as the statute fixes or does not fix a lien. The constitution places no lien. Art. 9, R. S. 1874, p. 899, secs. 253, 254, p. 896, secs. 229, 230, p. 883, sec. 155, p. 884, secs. 156-158, 160, 177, 191, 230, 255; *Schœfler* v. *The People,* 60 Ill. 179; *Hill* v. *Figley,* 23 id. 418; *Dunlap* v. *Gallatin County,* 15 id. 9; *Ryan* v. *Gallatin County,* 14 id. 83; *Almy* v. *Hunt,* 48 id. 46; *Hamilton* v. *Chicago,* 22 id. 586.

14. The law does not require the anticipation of the revenue, but on the contrary requires the levy to be made, and the money to be in the treasury substantially before the expenditure can begin. Constitution, art. 3, secs. 17, 18, art. 9, sec. 12; Rev. Stat. 1874, 227; City Incorp. Act, art. 7, secs. 2, 3, general sections, 92-99, 111, 113, p. 218, sec. 62, p. 227, secs. 89-91, p. 229, sec. 104, p. 878, sec. 122, p. 960, secs. 43, 44; *Comrs. of Highways* v. *Newell,* 80 Ill. 591; *Glidden* v. *Hopkins,* 47 id. 529.

Mr. JOSEPH F. BONFIELD, and Mr. GEO. W. SMITH, for the appellees:

1.   Current taxes may be appropriated in anticipation of their receipt, to the payment of proper and ordinary current expenses, as effectually as if they were, at the time of such appropriation, in the city treasury, and such appropriation is not the creation of a debt.   This is the general doctrine in other States, and is sustained by the following cases : *Grant* v. *City of Davenport*, 36 Iowa, 396 ; *The People* v. *Pacheco*, 27 Cal. 175 ; *Koppekus* v. *State Capitol Commissioners*, 16 Cal. 253 ; *The State* v. *McAuley*, 15 Cal. 455 ; *The State* v. *Medbury*, 7 Ohio, 522 ; *The State* v. *Mayor*, 23 La. An. 358 ; *Reynolds* v. *Shreveport*, 13 La. An. 426.

2.   The doctrine above announced is expressly affirmed by this court, with this qualification :

*First.*  "The tax appropriated must, at the time, be actually levied."

*Second.*  "By the legal effect of the contract between the corporation and the individual, made at the time of the issuing and accepting of a warrant or order on the treasury for its payment when collected, it must operate to prevent any liability to accrue on the contract against the corporation."   *City of Springfield* v. *Edwards*, 84 Ill. 626 ; *Law et al.* v. *The People*, 87 Ill. 385.

3.   The city had authority, under its charter, and by virtue of its granted powers and those necessary to carry out the object of its creation, to issue the warrants set forth in the bill. Rev. Stat. 1874, p. 227, secs. 88-91 ; p. 228, sec. 98 ; Dillon on Munic. Bonds, 9 ; *Commissioners of Highways* v. *Newell*, 80 Ill. 588 ; *Grant* v. *City of Davenport*, 36 Iowa, 401 ; *Mayor* v *Ray*, 19 Wall. 468.

4.   These warrants and certificates are an equitable assignment of so much of the tax of the year for which they were drawn, when collected, and, under the facts in the record, give the holder an equitable and specific lien upon so

much of such tax. *Phelps* v. *Northrup*, 56 Ill. 159 ; Story's
Eq. Jur. vol. 2, secs. 1840-6 ; *Kingman* v. *Perkins*, 105 Mass.
111; *Moore* v. *Lowery*, 25 Iowa, 336; *Merton* v. *Nailor*, 1
Hill, 583 ; *Burn* v. *Carwallo*, 4 Milne & Craig, 690-702 ;
*Grenfel* v. *Dean and Canons of Windsor*, 2 Bevan, 544 ; *Mitch-
ell* v. *Winslow*, 2 Story R. 630. The case of *City of Spring-
field* v. *Edwards, supra*, recognizes the principle that an ex-
change of the tax when levied may be made.

5.  The manner in which the municipality exercises the
authority to issue warrants, whether by a direct order upon
its treasurer to pay so much money at a given time, or an un-
dertaking to pay so much money at the office of its treasurer
out of the fund appropriated and levied, is immaterial. The
manner in which it exercises this power, even though irregu-
lar, is immaterial. *Van Hostrup* v. *Madison*, 1 Wall. 297 ;
*Meyer* v. *City of Muscatine*, ibid. 391; *James* v. *Milwaukee*,
16 Wall. 162; *Burr* v. *City of Carbondale*, 76 Ill. 455 ;
*Maxey* v. *Williamson County*, 72 Ill. 207 ; *Woodhull* v. *Beaver*,
3 Wall. 274.

In the latter cases above cited the doctrine was adhered to
that when the law was capable of a construction that would
authorize the issuance of bonds, and bonds had been issued,
though the court would, upon proper application, have en-
joined the issuance of the bonds, yet the municipal authori-
ties would be held to their construction of the law in favor
of a *bona fide* holder.

6.  The city having received the money from the holders
of these certificates and warrants, with which it has defrayed
the current expenses for the years 1875 and 1877, respective-
ly, even were the certificates void, an injunction will not go
to prevent the payment of the holder of the equitable claim
on the bond. A court of equity will not interfere on behalf
of a county to enjoin the payment of a debt which has the
sanction of a moral obligation. *County* v. *Hunt*, 5 Ohio St.
488 ; *Aurora Agricultural Society* v. *Paddock*, 80 Ill. 263;
*Bradley* v. *Ballard*, 55 Ill. 413.

7.   The power claimed by the city in issuing the certificates of 1875, as shown by the recitals on the certificates, can not be denied by the municipality.   For recitals in the certificates of 1875, Priv. Laws 1865, p. 382, sec. 25 ; Priv. Laws 1867, vol. 1, p. 340, sec. 7.   On effect of recitals, *Township of Coloma* v. *Eaves*, 2 Otto, 484; *Humboldt Township* v. *Long*, 2 Otto, 642; *Mury* v. *Township of Oswego*, 2 Otto, 637 ; *Township of East Lincoln* v. *Davenport*, 4 Otto, 801.

Power claimed can not afterwards be denied.   *Van Hostrup* v. *Madison*, 1 Wall. 291 ; *Meyer* v. *City of Madison*, 1 Wall. 354; *James* v. *Milwaukee*, 16 Wall. 159 ; *Woodhull* v. *Beaver City*, 3 Wall. 294.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellant, as a tax-payer in the city of Chicago, filed his bill to restrain the city authorities from paying a large number of outstanding certificates of indebtedness issued by the mayor, comptroller, and city clerk.

The bill alleges that in the year 1875 the city was indebted beyond the constitutional and statutory limit, but borrowed money and issued these certificates notwithstanding the want of power.   The following is the form of these certificates :

"This is to certify that the city of Chicago acknowledges to one John Doe the sum of $1,000, lawful money of the United States of America, which sum the city promises to pay to John Doe, or order, —— months after the date hereof (without grace), at the office of the treasurer of the city of Chicago, with interest thereon at the rate of —— per cent per annum from ———, 1875.

"This loan having been authorized by section 26 of amendments to the city charter, approved February 15, 1865, and by section 7 of the act of the General Assembly of the State of Illinois, amending the city charter, approved April 19, 1869.

"In testimony whereof, the mayor and comptroller of the

19—89 ILL.

said city have signed, and the clerk countersigned, these presents, and caused the seal of said city to be hereunto affixed, this —— day of ———, A. D. 1875."

The bill also alleges that in 1877 the city was still largely indebted beyond the constitutional and statutory limits, but notwithstanding such indebtedness, the mayor, comptroller and city clerk borrowed money, and issued other certificates in this form :

" This is to certify that John Doe has advanced to the city of Chicago $1000, lawful money of the United States, to meet that part of the current expenses of the year 1877 for which an appropriation has been made for said year, for the general appropriation fund, and that sum will be paid to John Doe, or order, upon the —— day of ———, 1878, without grace, at the office of the treasurer of the city of Chicago, with semi-annual interest thereon at the rate of six per cent per annum, from date, out of the taxes levied for said fiscal year, said tax levy having been heretofore actually made.

" The treasurer of the city is hereby ordered to make said payment as aforesaid, and charge to general appropriation fund.

" This warrant is issued for an amount not exceeding the appropriation for the above account, and not exceeding the amount of uncollected taxes apportioned to its payment, and which will be held and applied thereto, all of which is sanctioned by the mayor and finance committee, and duly authorized by law and the ordinance of said city.

" In testimony whereof, the mayor and comptroller of said city have signed, and the clerk countersigned, these presents, and caused the seal of said city to be hereunto affixed the —— day of ———, A. D. 1877."

It is further alleged that both kinds of certificates were duly signed, attested and delivered.

It is alleged that the city, since 1870, when the constitution was adopted and went into force, was indebted in a sum

amounting to more than five per cent of the assessed value of the property in the city assessed for taxation ; that the certificates of 1875 were issued on the receipt of moneys which were placed in the city treasury for the purpose of paying, as required, from time to time, the current expenses of the city, and the money was thus borrowed in anticipation of taxes then levied to defray the expenses of the city for the current year.

It is alleged that the certificates issued in 1875 amounted to $4,500,000 ; that $4,000,000 of that sum has been paid, and the city authorities threaten to pay the remainder, although such warrants are illegal and void ; that warrants were issued and drawn on the treasurer in 1877, and on which over three millions of dollars was in like manner borrowed for a similar purpose.

The bill alleges that since 1870 the city authorities have thus borrowed at different times money, on like certificates and warrants, to large amounts, and have paid large sums, but that there are outstanding certificates and warrants thus drawn, as appellant believes, $3,000,000 in the aggregate.

It is charged that all money thus borrowed since 1870, and particularly that borrowed in 1875 and 1877, was within the prohibition of the constitution and the statutes conferring power on the city, as its debt, at the time such sums were borrowed, exceeded five per cent of the value of the taxable property ascertained by assessment for taxation, and the city had been so indebted at all times since the constitution of 1870 went into operation ; that the mayor, comptroller and city clerk are daily drawing warrants on the treasury for the payment of these illegal and void debts, and the city treasurer claims that he has the right to and will pay such warrants, and the county collector claims the right to receive such warrants in payment of city taxes, in conformity to an ordinance authorizing the same.

The material allegations of the bill are admitted, but attempted to be avoided.   First, it is alleged that under the

law, taxes are levied, by the ordinance, in the first quarter of the fiscal year, and are not collected until the last quarter of that or the first quarter of the next fiscal year ; and it is insisted that the issuing of these certificates and warrants is only anticipating the taxes thus levied, and that it is necessary, under the present revenue law, to anticipate the revenue in this manner ; that the city government can not otherwise be maintained. If this should be admitted to its full extent, still that does not authorize the city authorities to disregard the constitution or their charter, which prohibits them from incurring such indebtedness. It may form a strong argument to the General Assembly to change the revenue laws, to relieve from the difficulty ; or for the city, like the State and the counties, to change its financial policy, so as to avoid the difficulty. All cities in the State are acting under the same charter, or, at least, under the same revenue laws, and no difficulties seem to be experienced by them. Nor does the State and the various counties complain of any inconvenience, so far as we have known. Hence this can not form any, the slightest, ground for issuing evidence of indebtedness when the constitutional limit has been reached.

The city alleged, and sets up in its answer, that it intends to pay such warrants and certificates out of the appropriation made, and in anticipation of which these various sums in 1875 and 1877 were borrowed, and to meet which they were expended, and such sums are severally payable out of taxes of such years when collected. The city was prohibited from borrowing money in any manner, or for any purpose, when these sums were obtained and these certificates of 1875 and 1877 were issued, as the city had passed the constitutional and charter limit of indebtedness, and they evidence indebtedness, and are therefore unauthorized and void.

The warrants do not purport to be drawn on any particular fund, and are absolutely payable without grace on a day named, and bear interest. They have none of the elements of an anticipation of a tax already levied, but they have the

forms of indebtedness.   Those issued in 1875 state that the sum named in each is borrowed under acts of the General Assembly, referred to, as conferring authority to borrow money by the city.   No amount of reasoning, it appears to us, can possibly show these warrants to be otherwise than evidence of indebtedness and for borrowed money.

The warrants of 1877 are also payable at all events, with interest, and without grace, by the city, on a specified day.   It is true, they specify that they are payable out of taxes levied for that fiscal year, stating that the taxes had been levied. They also state that they are issued for an amount not exceeding the appropriation, and not exceeding the amount of uncollected taxes appropriated to their payment, and which will be thus applied.   These warrants state they will be paid out of the taxes then levied, but they do not state they are only payable out of those taxes for the fund for which the advance had been made.   These recitals we think do not change the legal effect of these instruments.   They do not limit the right of the holder to payment out of these taxes, nor could he be so limited by the language of the certificate.   If not prohibited by the constitution and the charter, the holder of one of these over-due warrants could manifestly sue and recover thereon. They purport to be indebtedness, and only indebtedness, and must have been so considered by the persons advancing the money, and the city no doubt regarded it as a loan.

Appellees deny that these certificates increased the aggregate indebtedness of the city.   We have seen they were, in form and in substance, the evidence of indebtedness, and being such, they were undeniably evidence of increased indebtedness.   This proposition is self-evident.   The receipt of the money by the city, and its promise to pay on a specified day, with interest, we have seen constitutes a debt, and this debt of course increases the aggregate indebtedness of the corporation.   We presume all persons would call these certificates debts, and could find no other name for them.   This conclusion is not only sustained, but it is forced upon us by the cases

of *City of Springfield* v. *Edwards*, 84 Ill. 626, and *Law* v. *The People*, 87 Ill. 385. In the latter of these cases the validity of these certificates was before us, and we held them void. In that case the reasons for the conclusion are given at length, and in the former case the effect of the constitution on such instruments was fully considered and announced. We deem it unnecessary to here repeat the reasons given in those cases, but we must hold they control this case in all of its features. In fact, these are the same certificates that were involved in the latter case. We therefore hold these instruments were issued in violation of the constitution and the provisions of the charter of the city, and that both issues are void.

. But to avoid the force of this conclusion it is set up, as a defense, that the city only intends to pay them out of the taxes levied for the year in which these advances were made. This can not be held to be an anticipation. To have that effect, the warrant on the treasurer should be specifically drawn against the uncollected taxes of the particular year and fund to which the money was advanced, and not against the general fund or other funds in the treasury. The city, in its answer, has set out this as the form of the warrant on the treasurer:

"No. —.   $ —.                    *Chicago*, ————, 187–.
" *Treasurer of the City of Chicago:*

Pay to ————, or bearer, ——— dollars, and charge to Department of Public Works appropriation.

Countersigned.                    —— ————, *Mayor.*
                                  —— ————, *Comptroller.*"

It will be observed that this warrant is drawn on the treasury generally, and not on any particular fund, although it directs the treasurer to charge it to a fund named. The city can not use the taxes levied for one fund for the expenses of another. It follows, to anticipate the uncollected taxes of either of the funds the warrant must be specifically against, and to be paid out of, the taxes levied for that particular fund.

Had these warrants on the treasury been so drawn, then

the question would have been presented whether this was an anticipation of the taxes levied for that fund ;—whether the tax levied for a specific fund, and not collected, might be anticipated to pay money previously advanced by individuals to meet the expenses of the fund. In other words, treating these certificates of 1875 and 1877 as absolutely void, and as though never issued, may the city draw warrants on the treasurer to pay the principal, without interest, of such advances, payable alone out of the taxes, when collected, for the fund to which the advances were made?

The bill charges that the ordinance unlawfully authorizes the collector of taxes to receive the certificates of indebtedness of 1875 and 1877 in payment of city taxes generally. This is the provision of the ordinance, and it is not denied that the collector of taxes intends to and will so receive these certificates. This he has no power to do. Being void, he has no power to receive them in discharge of taxes levied for any purpose, and should be restrained therefrom. It was error in the Superior Court not to enjoin him therefrom, and like error in the Appellate Court in affirming the decree of the Superior Court. On the answer as it now stands, the city should be restrained from drawing warrants on the treasurer in the form given, and there was error in not doing so on the hearing.

For these errors the decree of the Appellate Court is reversed, and the cause remanded.

*Decree reversed.*

Mr. JUSTICE DICKEY, dissenting :

I can not concur in the conclusion reached by the court. I think the certificates of 1875 and 1877 are, under the decision of the *Edwards case,* wholly inoperative as evidence of city indebtedness, but had the effect of an assignment of so much of the funds to be derived from taxes for the year and fund, to which the money in the certificates was applied. I also think that the legal effect of a warrant drawn upon the treasurer, to be charged to a given fund, is the same as that of a

warrant directing the treasurer to pay out of that fund. The question of the form of warrant, however, does not seem to be a matter of much moment, as the form indicated by the governing opinion can readily be adopted. The ruling casts the costs of this suit upon the appellant, and imposes upon the city the expense of printing new blanks for these warrants.