EDWARD PRINCE

*v.*

THE CITY OF QUINCY.

*Filed at Springfield May 14, 1889.*

1. MUNICIPAL INDEBTEDNESS—*constitutional limitation.* A city can not be held liable in tort for the simple refusal of its council to pay an indebtedness contracted in contravention of section 12, article 9, of the constitution, and thus recover in damages the precise amount of that indebtedness, with interest from the time it became due.

2. The effect of this constitutional inhibition is to require cities indebted to the limit fixed by the constitution, to carry on their corporate

operations, while so indebted, upon the cash system, and not upon credit, to any extent or for any purpose.

3. If an indebtedness of a city for current expenses and supplying water is forbidden, as being in excess of the constitutional limit, the contract upon which it arose, though in itself executory and creating only a contingent liability, is also forbidden. Prohibition of the end is prohibition of the direct, designed and appropriate means.

APPEAL from the Appellate Court for the Third District ;— heard in that court on appeal from the Circuit Court of Adams county; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

Mr. WILLIAM McFADON, for the appellant:

The constitutional provision relating to indebtedness, above referred to, does not abolish or extinguish any of the powers of a city in relation to current expenses, as the same are conferred by its charter, but its chartered powers in such regard are, notwithstanding said provision, still left in force as there conferred. *Valparaiso* v. *Gardner,* 97 Ind. 1; *Grant* v. *Davenport,* 36 Iowa, 396; *East St. Louis* v. *Gas Co.* 98 Ill. 415; *Railway Co.* v. *City of Jacksonville,* 114 id. 567; *Laycock* v. *Baton Rouge,* 35 La. Ann. 475; *Tax-payers' Association* v. *City of New Orleans,* 33 id. 571.

Quincy, by its charter, and prior to the passage of the constitutional provision aforesaid, being empowered "to provide the city with water, to erect hydrants and pumps in the street for the convenience of its inhabitants," had the power to do the same thing after and notwithstanding the going into force of said provision. *City of Quincy* v. *Bull,* 106 Ill. 350; Private Laws, 1857, p. 181, sec. 22; Sess. Laws, 1840, p. 116, sec. 8.

The ordinance of Quincy, and the contract thereby created, was fully authorized by the power conferred on Quincy, and last above cited. *City of Quincy* v. *Bull,* 106 Ill. 350; *Valparaiso* v. *Gardner,* 97 Ind. 1; *Indianapolis* v. *Gas Light Co.* 66 id. 400; *East St. Louis* v. *Gas Co.* 98 Ill. 415; *Gas Light Co.* v. *Des Moines,* 44 Iowa, 508; *Grant* v. *Davenport,* 36 id. 396.

The city indebtedness, if upon a time contract for current expenses, does not arise at the time of making such contract. The true rule is, that the indebtedness under such contract only arises from month to month, as and when the article contracted for is furnished. *East St. Louis* v. *Gas Co.* 98 Ill. 430; *Valparaiso* v. *Gardner*, 97 Ind. 1; *Grant* v. *Davenport*, 36 Iowa, 396; *Neston* v. *Syracuse*, 17 N. Y. 113; *Laycock* v. *Baton Rouge*, 35 La. Ann. 475; *Reynolds* v. *Shreveport*, 13 id. 430; *State* v. *McCauley*, 13 Cal. 439; *People* v. *Pache County*, 27 id. 175.

The decisions of courts upon contracts which have been held payable out of revenue or a special revenue, become, then, applicable to the case in hand, and from these decisions it is clear, in such cases, that any default on the part of municipal authorities in collecting such revenue, or in taking the necessary steps to give such revenue to the parties entitled to the same, or to make the same available to them, is a wrong on the part of the officers, for which the city itself is liable in an action of tort. *Clayburgh* v. *City of Chicago*, 25 Ill. 536; *Lansing* v. *Van Gorder*, 24 Mich. 456; *Chaffee* v. *Granger*, 6 id. 51; 2 Dillon on Mun. Corp. sec. 968; *Kearney* v. *Covington*, 1 Metc. 339; *McCullough* v. *Mayor*, 23 Wend. 460; *Western* v. *Mayor*, id. 334; Shearman & Redfield on Negligence, sec. 136.

The following points are submitted to show that a tort has been committed:

*First*—The charter of the city of Quincy provides that the city council of said city shall have power to appropriate money and provide for the payment of the expenses of the city. Private Laws, 1857, p. 163, chap. 4, sec. 4.

*Second*—The vesting the power last aforesaid in the city council of Quincy, carried with it the duty, on the part of that city council, to appropriate money and provide for the payment of the expenses of the city, for the failure to perform which an action lies in favor of the party aggrieved, against the city. *Clayburgh* v. *Chicago*, 25 Ill. 536; *City of Cairo* v. *Campbell*, 116 id. 309; *Seagraves* v. *City of Alton*, 13 id. 366;

*Chicago* v. *Robbins*, 2 Black. 418; *Bloomington* v. *Bay*, 42 Ill. 507; *Lansing* v. *Van Gorder*, 24 Mich. 456.

*Third*—Under the provision of the charter last cited it was not only the duty of such city council to appropriate money, but it was also the duty of that body to audit bills, and to pass any and all ordinances and resolutions, and to do any and all acts and things necessary to give the appellant his money. *Frank* v. *San Francisco*, 21 Cal. 695; *State* v. *Cincinnati*, 19 Ohio, 195; *City of Cairo* v. *Campbell*, 116 Ill. 309.

*Fourth*—Action on the part of Quincy's city council, under such power as that last cited, is not legislative or discretionary, but the exercise of such power by such council is imperative in favor of the party entitled to the money for current expenses furnished. *City of Cairo* v. *Campbell*, 116 Ill. 309; *Supervisors* v. *United States*, 4 Wall. 447; *Galena* v. *Amy*, 5 id. 705; *Commonwealth* v. *Pittsburg*, 34 Pa. St. 513; *Robinson* v. *Butts City*, 43 Cal. 354; *Frank* v. *Supervisors*, 21 id. 695; 2 Dillon on Mun. Corp. sec. 857.

*Fifth*—A duty being imposed on Quincy's council by the chartered provision last cited, and that duty being omitted, and by virtue of such omission a substantial loss of money resulting to said appellant, we have here all the elements of a tort. *Loup* v. *Railroad Co.* 63 Cal. 99; Underhill on Torts, 4.

The constitutional provision relating to indebtedness does not constitute a defense to an action against a city, though indebted to the five per cent limit, where the action is in tort, brought for the negligence of its agents. *City of Chicago* v. *Sexton*, 115 Ill. 245; *City of Bloomington* v. *Perdue*, 99 id. 329; *Bartle* v. *City of Des Moines*, 38 Iowa, 414; *Rice* v. *City of Des Moines*, 40 id. 638.

Mr. GEORGE A. ANDERSON, and Messrs. CARTER & GOVERT, for the appellee:

It being conceded that the city could incur no indebtedness to plaintiff, can the city be held guilty of a tort for the failure

or refusal of the council to make provision for the payment of plaintiff's demands? The substance of appellant's contention is, that because of this constitutional prohibition the city should have paid his bills in cash as they accrued, or else they would become an indebtedness which he would be powerless to collect.

This constitutional prohibition was adopted to protect the tax-payers from extravagant use of municipal funds. It is not a question between contractors and city officials, but is a question that concerns those who have to bear the burdens of government, and whether a constitutional provision designed for their protection, and which forbids the creation of any indebtedness whatever by the municipality, directly or indirectly, for any manner or any purpose, when this limit is passed, can be evaded by the simple process of the officers refusing to pay, "or willfully and maliciously refusing to pay," and thus change what would otherwise be a debt, into a liability for a wrongful and illegal action.

While it may be true that a tort may consist in some act made wrongful because of some obligation created by contract, yet in its general signification the word "tort" implies a wrong independent of contract. It is so defined by the English Common Law Procedure act of 1852. Cooley on Torts, p. 3, note.

If the action of the city council in refusing to pay the plaintiff's alleged claims amounted to a wrong or tort, it was in his discretion to have either sued in case, or to have waived the tort and sued in assumpsit. *Staat* v. *Evans,* 35 Ill. 455 ; *Gray* v. *St. John,* id. 222 ; *Ives* v. *Hartley,* 51 id. 520 ; *Alderson* v. *Ennor,* 45 id. 128 ; *Creel* v. *Kirkham,* 47 id. 344 ; *De Clerq* v. *Mungin,* 46 id. 112 ; *Parker* v. *Tiffany,* 52 id. 286.

If plaintiff's theory of the action of the city council in refusing to pay the water bills is correct, he must be held to have waived the wrong in bringing his suit in assumpsit. Benjamin on Sales, 342 ; Story on Sales, sec. 446 ; *Kellogg* v. *Turpie,* 2 Bradw. 55 ; *Brumbach* v. *Flower,* 20 id. 219.

The city is not liable in tort for the failure of the council to pay the alleged claims, for these reasons : First, the city council is a legislative body ; second, the contract created a monopoly, and was void ; third, the contract was for a long term of years, and was against public policy, and was voidable ; fourth, the city had no power to create a debt. *City of Detroit* v. *Blakely,* 21 Mich. 84.

Now, we deny that the record shows that there was any fault or wrongful neglect on the part of the city council, but we insist that if it did, the corporation can not be held liable, as in tort, for a mere non-feasance of the city legislature,—and this, whether the contract or indebtedness was or was not prohibited. Dillon on Mun. Corp. secs. 91, 482, 949, 964 and note, 966, 1048 and note ; *Baker* v. *State,* 27 Ind. 489 ; *Morris* v. *People,* 3 Denio, 381 ; *Wells* v. *City of Atlanta,* 43 Ga. 67 ; *Gillett* v. *Lyon,* 18 Kan. 410 ; Thompson on Negligence, 676, 731, 816, note 1.

Public officers whose offices are created by the act of the legislature, as, members of a city council, are not municipal agents or servants. Their neglect is not to be regarded as the neglect of the municipal corporation. And the city is not liable for the non-feasance of its public officers in the performance of their public duties, unless expressly made so by statute. *Wheeler* v. *City of Cincinnati,* 19 Ohio St. 19 ; 2 Am. Rep. 368 ; *Brinkmeyer* v. *City of Evansville,* 29 Ind. 187 ; *West Col. Med.* v. *City of Cleveland,* 12 Ohio St. 375 ; *Thomas* v. *City of Richmond,* 20 Wall. 349 ; Dillon on Mun. Corp. secs. 61, 372 ; *Gibbs* v. *City of Beaufort,* 20 S. C. 213 ; 5 Am. and Eng. Cor. Cases, 428 ; *Black* v. *City of Columbia,* 19 S. C. 412 ; Am. and Eng. Cor. Cases, 640 ; *White* v. *Chenbester,* 2 Hill, 572 ; *Coleman* v. *Chester,* 14 S. C. 290.

A legislative corporation, established as a part of the government of the country, is not liable for a non-feasance by an omission to observe a law of its own, in which no penalty is provided. *Fowler* v. *City of Alexander,* 3 Pet. 408 ; 2 Dillon

on Mun. Corp. 949; Boon on Corp. sec. 300; 2 Thompson on Negligence, 675, 818; *Board* v. *Schroeder*, 58 Ill. 353.

Per Curiam: This case originated in the circuit court of Adams county, and was there determined adversely to appellant on a general and special demurrer to his declaration. He appealed to the Appellate Court, where the judgment of the circuit court was affirmed, and he now brings the record to this court.

The following opinion was rendered in the Appellate Court for the Third District, by Pleasants, J. :

"This was an action on the case, brought by the appellant, against appellee. The declaration contained eleven counts. A demurrer, general and special, to the whole declaration, and to each count thereof, was sustained, and the plaintiff abiding, a judgment of *nil capiat* and for costs was rendered against him, from which he took this appeal. The question is upon the sufficiency of this declaration.

"In the first count it is alleged that the defendant was incorporated by special act, which empowered it, among other things, to appropriate money and provide for the payment of the debt and expenses of the city; that in August, 1873, it passed an ordinance, (set out *in hæc verba,*) which was duly accepted by plaintiff, and so became a contract between them, whereby plaintiff was to construct, maintain and keep in operation within the corporate limits of the city, a general system of water works, to be extended and enlarged, from time to time, as therein prescribed; and the defendant was to pay him, in monthly installments, from the time water should be turned on, the sum of $2600 per annum, and also, in like manner, $200 per annum for each of the first one hundred hydrants, which contract was, by its terms, to run for a period of thirty years; that the plaintiff fully performed all the things by said contract required of him, and within the time thereby limited for that purpose, and at all times during the fiscal year next.

29—128 Ill.

mentioned, had and furnished water through seventy-seven hydrants, on each of which water had been previously turned, and all of which had been located under and pursuant to the provisions of said contract; that the city had a fiscal year of its own, commencing March 31, 1880, and an income and revenue of its own for said year; that at the commencement of said year, and at all times during the same, it was indebted upon its valid bonds theretofore issued and then outstanding and unpaid, to the amount of more than $1,700,000, which greatly exceeded five per cent on the value of all the taxable property within its limits, as ascertained by the last assessment for State and county taxes made before the commencement of said year, or by any assessment therefor made during said year; that by reason thereof, plaintiff became and was entitled to payment out of the revenue of said year, and the city council ought to have provided out of the same for the payment to him of the contract rate per hydrant specified in said ordinance; that although the city, during said fiscal year, received and used the water so furnished through said seventy-seven hydrants, and its income and revenue during said year was ample and sufficient for such payment in full, nevertheless the city council willfully neglected and refused to appropriate the revenue of said year to or provide for the payment of the amount so due to the plaintiff, but, on the contrary, permitted said revenue to be dissipated, scattered and diverted from the payment thereof, by means whereof the revenue of said fiscal year was lost to the plaintiff, and the amount due him for water furnished to the defendant during said year remains unrecovered and unpaid.

"In this count the duty of the council is alleged to have been to provide for the payment to plaintiff, out of the revenues of the year, the amount of the contract rate for the water furnished during the year. This duty is predicated upon (1) the chartered power of the council to appropriate money and provide for the payment of the debts and expenses of the city;

(2) its express contract with plaintiff, performed on his part; (3) its indebtedness, previously and then existing, to the full limit of its constitutional power to contract indebtedness; and (4) its possession of revenue for that year sufficient for such payment. The breach complained of is its refusal so to provide for payment to the plaintiff, and the appropriation of said revenue to other uses; and the damage or injury to the plaintiff alleged is the non-payment of his claim.

"The other counts, excepting the 9th and 11th, are, in principle and general form, the same as the first, the difference being that some relate to the claims for water furnished during the two following years, respectively. Some aver that an actual though insufficient appropriation was made for the year therein mentioned; some allege the contract as one implied, from the receipt and use of the water, to pay the plaintiff *quantum meruit;* some state the duty as to pay for current expenses *pro rata,* and some charge the refusal to pay as designed and malicious.

"It is not proposed to notice all of the many points discussed and authorities cited by counsel, but only two or three which, in the light of our own State decisions, are deemed decisive of the question here presented.

"At first blush it would seem that by each of these counts it is sought to charge the city in tort for the simple refusal of its council to pay an indebtedness contracted directly in the face of an express constitutional prohibition, and so to recover as damages the precise amount of that indebtedness, with interest from the time when it became due by the terms of the contract. But counsel, as was to be expected, disclaim a position so clearly untenable. Yet this apparent effect of all the facts alleged, is obviated only, if at all, by the introduction into the pleading itself, by inference and as argument, of certain propositions of law touching the effect of the constitutional prohibition upon the contract and claim in question, and the character of the fund called 'current revenue,' which are ad-

mitted to be essential to the sufficiency of these counts. Those propositions are, that the legal effect of the prohibition upon plaintiff's claim was to make it, not non-payable, but payable only out of current revenue, and that current revenue was a specific fund for its payment, and they raise the question we purpose mainly to consider.

"The reasoning in support of them, and which develops the theory of appellant's case more fully, is this: (1) Conceding that appellee had already reached the limit of indebtedness prescribed by section 12, of article 9, of the constitution, the prohibition there contained did not abrogate its charter powers 'to provide the city with water and to erect hydrants and pumps in the streets for the convenience of its inhabitants,' and 'to appropriate money and provide for the payment of the * * * expenses of the city,' or any others, but only forbade that in the exercise of these powers it should contract any further indebtedness; (2) that a city so indebted may nevertheless incur current expenses for police service, lighting the streets, water supply and the like, provided, only, it does not thereby add to its indebtedness; (3) that to contract for such services, if it can pay for them out of current revenue, is not necessarily to add to its existing indebtedness; (4) that under continuing contracts therefor, providing for periodical payments, no indebtedness can arise until the service is rendered up to a period for payment, and if payment is then made, none has been thereby added to that already existing, within the meaning of the prohibition; (5) that being forbidden to contract indebtedness for them directly, or to borrow means of payment, the only resource is the current revenue; (6) that being the only available means of payment, this current revenue is a specific fund for that purpose; (7) that so to apply it is therefore a specific ministerial duty of the council, made all the more clear and binding by its limitation to this means; (8) and that the refusal, neglect or failure to perform such a duty is a municipal tort. Of this series of propositions we hold the third, fourth,

fifth and sixth, which embrace the two previously stated, to be unsound; and if they are so, the seventh and eighth are inapplicable.

"The constitutional provision referred to is, that 'no &ast; &ast; &ast; municipal corporation shall be allowed to become indebted, in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness.' This language leaves nothing for construction, except to ascertain what it is 'to become indebted,' in the sense here intended, for none that could be employed would be more apt to show that upon all such contract liabilities as are within its purview, this provision operates with only one ·effect, which is to disallow them. It is too plain for argument, that it does not classify them as non-payable and payable-out-of-special-funds, or otherwise, nor change any from being a charge against the city generally, into a charge against its current revenue only, but makes them all alike absolutely non-payable and void. If, then, the contention of counsel, that it so changed the contract and claim here in question, is an admission that they were within its purview, it admits away their case; and if the fact that without that provision it would have been an indebtedness against the city generally, shows it to be so, then that fact, independently of any admission, must also be fatal. It either was or was not within the purview of the inhibition. If not, it was in no way affected by it; if it was, the refusal to pay it, however caused or manifested, could not be a tort.

"We apprehend the real position of counsel to be, that because this claim was properly payable out of current revenue it was not within the inhibition, which is therefore invoked only as further certifying and enhancing the alleged duty of the council to pay it accordingly. But it can not be that the duty referred to was that of anticipating the revenue, and

avoiding liability by assigning the amount required, without recourse, out of a tax already levied for the purpose, as indicated in the *Edwards case*, 84 Ill. 633. It is not averred that any such course was ever requested or suggested by appellant, nor does it appear that its necessity or propriety was apprehended by either party. Another and different one was expressly provided, with his full understanding and assent. In reference to both the $2600 per annum and the additional sum per hydrant, the language of the ordinance is the same: 'Said city shall pay said Prince, in monthly installments, from the time water is turned on,' etc. (Sections 4 and 7.) Thus the contract was not to provide for payment, but to pay; not out of a particular fund, but absolutely; and the obligation for the delivery of the money was not cast upon its officers, but assumed by the corporation. Failure in duty respecting this claim must therefore consist in failure to pay it according to the contract. So we understand the wrong really charged to be, not in procuring the contract, or its performance without securing or providing for payment in a particular way, but in refusing to pay.

"By its charter the amount of taxes the city could levy in any one year, for all purposes except for interest on its registered bonds, was limited to $1.03 on the $100 of the assessed valuation of all the real and personal property therein. (*Binkert* v. *Jansen*, 94 Ill. 283.) The amount of such valuation, or of the taxes levied, or of the current revenue, in any one year, or how it was applied, or that one dollar was improperly applied except as it was thereby diverted from the payment of appellant's water bills, is nowhere averred. Therefore, the dissipation and scattering of the revenue, as alleged, involved no wrong, unless the payment of appellant was a duty; and so the charge is reduced to a refusal to pay him, which in this case would be a mere breach of the contract in that behalf, unless such payment was a duty specifically imposed by something besides the contract itself, since no other element of a

tort is alleged or discovered in the fact or cause or manner of the refusal,—and hence the importance attached to the fact of the city's existing indebtedness, and the consequent effect, as supposed, of the constitutional inhibition. Thus, the position of appellant seems to be, that the contract, being for current supplies to be furnished continuously for a specified sum per annum, payable monthly, within the amount of current revenue, did not create such a liability on the part of the city as was forbidden, and if the periodical payments provided for had been made when due by its terms, no indebtedness, within the meaning of the constitution, would have arisen, and that his claim became an indebtedness, and therefore non-payable, as such, by the failure to pay it when due, which was wholly the fault of the city council, and is the tort here complained of.

"There is no doubt that the effect of the inhibition was to require the city, indebted as it was, to carry on its corporate operations, while so indebted, upon the cash or pay-as-you-go plan, and not upon credit, to any extent or for any purpose, and the question is, whether the course contemplated by this contract was in accordance with that plan. It clearly did not contemplate any payment in advance, but that a claim against the city would be constantly accruing, payable from month to month, for water previously furnished, 'from the time water is turned on,' and that having been furnished, the obligation to make these payments at the times specified would be absolute, and wholly irrespective of its ability or actual possession at such times, of cash wherewith to make them. Thus some credit was contracted, and not upon the faith of money in hand when performance by appellant was begun, but of money expected to be in hand when it should be completed. And under the charter limitation of the amount of annual taxes to be levied, and the known method of their collection, some risk of its unavoidable extension beyond the fiscal year was necessarily incurred.

"Appellant's claim arose directly upon this contract, as executed *pro tanto*. It was for a specified sum of money thereby agreed to be paid for certain services to be rendered, which were rendered. Had there been no limit to the amount for which the city could become indebted, he could have recovered upon it a general judgment, (*East St. Louis* v. *East St. Louis Gas Light and Coke Co.* 98 Ill. 415,) and then have had a *mandamus* for the levy and collection of a tax to pay it. (*City of Cairo* v. *Campbell*, 116 Ill. 305.) In other words, it would have been a proper debt against the city,—a contract liability, which had become absolute for a sum certain in money. Nor is it perceived how it could have been any the less a debt against the city if it had been made payable out of a sufficient current revenue, or any specific fund, or if the city had been all the time possessed of money enough to pay it and all other current expenses, or if it had been actually paid when due. Such payment would have extinguished the indebtedness, but could not have anticipated, prevented or avoided it. That accrued from day to day, as the water was furnished, (*East St. Louis case, supra,* p. 430,) though it was not payable until the end of the month, for there was no default on the part of appellant, nor any failure of any contingency on which his right to the money, under the contract, if it had been valid, depended. Then, if the indebtedness so arising was forbidden, the contract upon which it arose, which expressly contemplated and provided for it, though in itself executory, and creating only a contingent liability, was also forbidden. Prohibition of the end is prohibition of the direct, designed and appropriate means. Being an attempt by the city to put it in the power of appellant, and induce him to acquire an absolute indebtedness against itself, it was, so far as executed, as clearly against the policy and provision of the constitution as the creation of a present debt. If it had not been executed, nor any attempt been made to enforce it or to recover for a breach of it, and so far as it remains unexecuted, of course no such question

could arise. There would be nothing to which the inhibition could apply. *East St. Louis case, supra.*

"In *City of Springfield* v. *Edwards*, 84 Ill. 632, the court, construing this provision, say it is 'against becoming indebted,— that is, voluntarily incurring a legal liability to pay, in any manner or for any purpose, when a given amount of indebtedness has previously been incurred. * * * A debt payable in the future. is, obviously, no less a debt than if payable presently, and a debt payable upon a contingency,—as, upon the happening of some event, such as the rendering of service or the delivery of property, etc.,—is some kind of a debt, and therefore within the prohibition. If a contract or undertaking contemplates, in any contingency, a liability to pay when the contingency occurs, the liability is absolute,—the debt exists,— and it differs from a present unqualified promise to pay, only in the *manner* by which the indebtedness was incurred; and since the *purpose* of the debt is expressly excluded from consideration, it can make no difference whether the debt be for necessary current expenses, or for something else.' These general propositions would seem to cover all the material points here involved. But the court went further, and specifically held it unlawful for a city so indebted to incur a liability for current expenses, or anything else, even though it should at the same time (as some of the counts allege it did here) make a formal appropriation, within the limits of the revenue, to meet it; that to avail itself of current but uncollected revenue for such purpose, it must go further, and assign the amount out of a tax actually levied, and without recourse, in such manner as to 'leave upon the city no future obligation, either absolute or contingent, whereby its debt might be increased.' The authorities to the contrary here relied on, from Iowa, California, Ohio and Louisiana, were there considered, and expressly held to be overborne by the plain, broad terms of our constitution. We can not avoid the conclusion, from this decision, that the contract here in question was void, and that the claim

of appellant, whether upon the contract or *quantum meruit,* was not legally payable out of current revenue or otherwise.

"In *Law* v. *The People,* 87 Ill. 385, that case was approved, and the propositions above quoted were affirmed, the court declaring the inhibition was intended to embrace indebtedness of every description, nature and kind, and in every sense of the term, whatever the character or form by which it was evidenced, when made or issued after the limit should be reached. This leaves no possible ground for the supposed distinction between an indebtedness for current expenses and other accounts, or between one payable out of a specific fund and one chargeable against the city generally. See, also, *Fuller* v. *City of Chicago,* 89 Ill. 282; *Fuller* v. *Heath,* id. 296; *Howell* v. *City of Peoria,* 90 id. 104; *City of Litchfield* v. *Ballou,* 104 U. S. 190.

"But still more directly, the questions upon which the right to maintain this action depends, seem to us to be *res judicata. Prince* v. *City of Quincy,* 105 Ill. 138, was a suit in assumpit between these same parties, upon the contract, and for the claim here under consideration. The defense pleaded was, in substance, that at the time of making the contract sued on, the city was, and ever since had continued to be, otherwise indebted, in an amount exceeding the constitutional limit. The plaintiff replied, that the several sums of money sought to be recovered 'pertained to the ordinary expenses of the defendant in the administration of the affairs and government of the city, and that at the time of the making of said contract the said several sums of money so provided to be paid monthly by said defendant to said plaintiff, together with other ordinary expenses of the government of the said defendant, were within the limits of the current revenue of said defendant;' and the case was disposed of on demurrer to this replication. It was there contended, on behalf of appellant, that the term 'indebtedness' did not apply to contracts relating to the ordinary current expenses of a city, payable out of the current revenues, and the Iowa and California cases were cited; but the court

held, that 'to so construe the constitution would be to add a provision in the nature of an exception, which the framers of that instrument did not see proper to insert.' The plea was therefore held good and the replication no sufficient answer to it, the two preceding cases were approved, and the construction therein given was declared to be the result of the 'deliberate and mature consideration' of the court. There it was admitted by the pleading that the parties made this contract; that the plaintiff performed it on his part; that the water supplied was of the ordinary current expenses of the city; that the price agreed on and claimed, and the other current expenses, were within the amount of current revenue, and that the city refused to pay him; and yet he could not recover, because, by reason of its existing indebtedness, the contract sued on and the claim so arisen thereon were prohibited by the supreme law of the State, and therefore void. This case, and another like it, reported in the same volume, at page 215, distinctly hold that the identical claim here in question was a debt added to that already existing against the city in excess of the limit prescribed, and directly within the inhibition. It must follow, that the refusal to pay it when due by the terms of the contract, or at any time afterwards, whether from inability in consequence of the diversion of the revenues to other uses, to its exclusion, or other causes, or from willfulness, could not be a tort. Its payment at that time, out of current revenues or any other fund, or in any way whatsoever, instead of being a duty enhanced or imposed by any law, contract, fact or condition, was absolutely forbidden, and would have been unlawful. There being no duty to pay, the refusal could make no case for *mandamus* or any other proceeding at the suit of appellant, and the case of *Clayburgh* v. *City of Chicago*, 25 Ill. 536, and others cited to like effect, are not in point.

"But it is said, that under the form of contract here presented there could be no indebtedness until the period for payment arrived, and (if we understand counsel) that had payment been

then made none would ever have arisen, within the meaning of the inhibition. The case of *East St. Louis* v. *East St. Louis Gas Light and Coke Co.* 98 Ill. 430, is cited as if it modified the decisions above referred to on this point. There it was for the supply of gas light for a long term of years, at a stipulated price per lamp per year, payable in monthly installments; and while the court held, that the price for the whole term was not to be considered an indebtedness incurred on the making of the contract, within the meaning of the constitution, we understand it to have held, that the installments, as they became due, would be, even if they were paid at the time. Its language is: 'Had the contract been performed in compliance with the terms, * * * there would have arisen no indebtedness on the part of the city for more than one month's gas supply.' (Counsel will observe that from the quotation in their brief, at bottom of page 16, two important words are omitted —doubtless through inadvertence.) This, we apprehend, is strictly in harmony with that herein above quoted from the *Edwards case;* and in *Prince* v. *City of Quincy*, 105 Ill. 143, we have the direct authority of the court itself for saying it does not modify those referred to. A recovery was allowed because the amount accrued and claimed did not increase the city's debt beyond the limit prescribed.

"The argument seems also to be pervaded by a somewhat vague assumption of a distinction between payment and providing for payment, as a basis for the contention that by virtue of the charter power to provide for the payment of the expenses of the city, independently of the contract, or under the contract as claimed to be changed by the inhibition, a duty was devolved upon the council in respect to appellant's claim to take whatever action was necessary to satisfy it when it should become due. That would include the appropriation of money, the levying of a special tax, the auditing of bills, the passage of ordinances and resolutions, the issuing of warrants against the tax levied, without recourse, and any and all other things

required by law to be done before it became due by the terms
of the contract, in order to give him the money contemplated
by the contract, or that he ought to have. The claim is, that
the omission of any such act, resulting in a substantial loss
to appellant, constitutes a tort, and it is urged as being entirely
consistent with the admission or fact that the claim did be-
come such an indebtedness as was prohibited, and therefore
unrecoverable as such.

"It is true, that notwithstanding the indebtedness and the
inhibition, the city continued to have authority to provide a
water supply, and that it remained under obligation to pay
its current expenses, consistently with the constitution. If,
however, upon its contracting for proper supplies or services
without any express provision as to the mode of payment, the
law would imply a duty to take all needful steps to effect it,
as intimated in *Law* v. *The People*, 87 Ill. 400; and if it might
so fail to perform as to be guilty of a tort, that, as we have
attempted to show, is not the case presented by this declara-
tion, and if it were, it must surely be that this duty could be
made unavailable in this form of action, by the consent of the
party to whom it would otherwise be owed. How can appel-
lant charge that the city tortiously omitted to assign enough
of the uncollected revenue to pay him in such time and man-
ner as to avoid all liability on account of the water supplied,
since he expressly agreed to give, and did give, it credit there-
for, and looked to it for payment when and after it should
become due according to the agreement? This agreement can
not be ignored. It is alleged and set forth in each of these
counts. It fully shows all the obligation he asked or the city
assumed in that behalf. Its performance would have accom-
plished the same object, but in quite a different manner. His
stipulation for and reliance upon its performance was there-
fore necessarily a consent to the non-performance of the other,
which for that reason could be no wrong to him, for it is not
pretended that such consent was obtained by the misrepre-

sentation or concealment of any fact, or other fraud on the part of the council. The truth evidently is, that both he and the board that passed the ordinance supposed that the inhibition (if it was in their contemplation at all) would not affect this contract; that the agreement to pay in monthly installments (provided they could be paid, as they became due, out of current revenue,) would not operate to increase the corporate indebtedness; that if each board should pay the bills of its term, as they became due, out of current revenues, or so applied them that at its close no indebtedness for the current expenses thereof would be left unsettled and open against the city, there would be no infringement of it. Of the plausibility or reasonableness of this view there is no need to say more than that our Supreme Court, differing, perhaps, from some others as to like cases, pronounced against it. Being entertained by these parties at the time, however, they innocently provided for and created this monthly debt, and so long as it was held the councils continued to pay it. A later board, coming to doubt its authority, on that ground refused to do so any longer. Still, appellant did not shut off the water, nor propose a new arrangement for its supply, nor go on under any implied promise to pay him *quantum meruit*. On the contrary, he insisted on the validity of the ordinance, and brought suit upon it, although, as he alleges in the eleventh count, on the invitation of the council, and upon the promise that if it should be decided against him the city would pay him for water furnished in the meantime a reasonable price,—which would seem to have been an attempt to create another contingent liability quite as obnoxious to the constitution as the one the council had just repudiated and the Supreme Court afterwards condemned.

"We think this contract for credit, voluntarily made, without fraud on the part of the council or ignorance of any material fact on the part of appellant, estops him to charge that the failure to pay, or make provision for payment, otherwise than

as so agreed, was a wrong. The rule embodied in the maxim *volenti non fit injuria* is, 'that no one can maintain an action for a wrong where he has consented or contributed to the act which occasions his loss.' Broom's Legal Maxims, (2d ed.) 201. And the estopping fact appearing in the declaration may be taken advantage of on demurrer.

"The ninth count, setting out the contract, and averring its performance by plaintiff and payment therefor by defendant for some years, then alleges, that although defendant afterwards discovered it, and notified plaintiff that it would no longer be bound thereby, nevertheless it continued to use the water, without intending to pay and intending not to pay for it. This is likened to the fraud of obtaining personal property under pretense of purchasing, but with the intention not to pay. We think there is a wide difference. Deceit, which is the essence of fraud, is the chief characteristic of that case, but is not even charged in this. These works were established and in actual operation, supplying the city and its inhabitants, under an ordinance which may have been valid as to all or many others òf its provisions, though void as to that relating to payment by the corporation. *City of Quincy* v. *Bull*, 106 Ill. 348.

"Section 17 provides, that 'said Prince shall have the right to make all needful rules and regulations for the government of said works, in all its branches and departments; and no person, except the city council or said Prince, or their properly authorized agents, shall have the right to open or interfere in any way with any fire hydrant in said city, and said city shall have at all times the right to use water from said fire hydrants for the following purposes, and no other, viz., for the extinguishment of fires, for the use, exercise and practice of fire engines, for filling fire cisterns, and other legitimate and proper fire purposes.' Under this provision, duty to persons and property within its limits required the city to use the water for these purposes, notwithstanding its intention not to

pay for it, according to the terms of the ordinance. It is not claimed that it used it for any other, nor that it 'disowned' any other provision of the ordinance than that which was 'disallowed' by the constitution. Duty also required it to disown that, and for so doing it should not be subject to any penalty, forfeiture or restriction of right under other and valid provisions, nor to any unfavorable presumptions or odium that should attach to a willful repudiator. The giving of the notice mentioned was, therefore, an act of frankness and justice to appellant, and not at all indicative of fraud. For aught alleged in this count, it would have agreed to any lawful arrangement, if any had been proposed, for the satisfaction of his claim. The averment of its intention not to pay seems to be an inference from the notice, and, in connection with such notice and disownment of the contract as stated, is to be limited to an intention not to pay under that contract. So, also, for aught that appears, if he had merely acquiesced in the view taken by appellee of that provision, it would have accepted the implications referred to in *Law* v. *The People*, above mentioned. But, in any case, the count is defective in not averring that any deceit was practiced by appellee, or that appellant was in fact ignorant of any intention it entertained,— that is, it does not expressly charge fraud, and the fact that the city continued to use the water after notice given, and with intention not to pay for it, under the circumstances stated does not necessarily imply or import fraud.

"We have already observed, that the eleventh count avers no more than the breach of another agreement that was also inhibited by the constitution, and not a tort."

The controversy involved in this suit has twice before been submitted to this court in actions *ex contractu*, brought by appellant, against appellee, on both of which occasions we held he could not recover. (*Prince* v. *City of Quincy*, 105 Ill. 138, 215.) It is sought by this action to avoid the force of those decisions by suing in tort. This can not be done. The de-

murrer to the declaration, and each count thereof, was properly sustained by the circuit court, and we are entirely satisfied with the judgment of the Appellate Court, and the reasons therefor given in the foregoing opinion. Being convinced, after a careful examination of the argument of counsel for appellant, and the authorities relied upon to support this action, that there is no theory upon which either of the counts of the declaration can be sustained, and holding that all substantial questions raised are clearly and correctly disposed of by the opinion of Judge PLEASANTS, there is no occasion for further discussion of the case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*