CITY OF HELENA v. MILLS.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1899.)

No. 510.

MUNICIPAL CORPORATIONS — CONSTITUTIONAL LIMITATION OF INDEBTEDNESS —
CONTRACT FOR WATER SUPPLY.

Under the constitution of Montana, which limits the indebtedness of municipal corporations, and provides that all obligations in excess of the amount so limited shall be void, a city not authorized by statute to levy and collect a special tax for water purposes, and which is already indebted beyond the constitutional limit, has no power to bind itself by a contract for a supply of water to be furnished for municipal purposes; and a claim accrued for water furnished under such a contract is within the constitutional prohibition, and cannot be enforced.

In Error to the Circuit Court of the United States for the District of Montana.

It is sought by the writ of error in this case to review a judgment rendered by the circuit court upon the pleadings in an action brought by the defendant in error to recover for water furnished to the city of Helena under a contract made in pursuance of an ordinance of the city approved by the mayor on August 17, 1897.

The ordinance provided, among other things, that James H. Mills, as the receiver of the Helena Consolidated Water Company, should furnish "a full, ample, sufficient supply of good, pure, wholesome and clear water through said plant and system and the hydrants thereto connected, to the city of Helena for fire, sewerage and other municipal purposes, for a period of five years from the first day of August, A. D. 1897." The ordinance further provided that if, within 30 days after its passage, the receiver should file with the city clerk his acceptance of its terms, it should go into effect and operate as a contract between the parties. The receiver accepted the ordinance, and has since supplied the city with water. In May, 1898, the city refused to pay therefor. The complaint alleged these facts, and further stated that the water plant operated by the receiver is the only one in the city of Helena, and was the only one at the time of the passage of the ordinance; that no other person or corporation was able at the time when said ordinance was passed, or for a long time prior thereto, or at any time since, to furnish water to the city of Helena for the purposes specified in the ordinance; that the city has since the passage of the ordinance levied and collected taxes sufficient to meet the amount provided for in the ordinance. The answer admitted all of said facts, but alleged that at the time when the contract was entered into, and at all times since, the city of Helena could have entered into a contract with responsible parties to supply it with water within six months from the making of such contract, and that within such period the city could have been supplied with water from sources other than those controlled by the defendant in error, and that the contract was entered into without advertising for bids, and that, had the city asked for bids, and offered to enter into a contract with the successful bidder to supply it with water within six months thereafter, responsible parties other than the defendant in error would have bid; that prior to the ordinance the receiver and the water company had for more than two years supplied the city with water without any express contract. The answer further alleged that the city is, and ever since the passage of said ordinance has been, indebted beyond the constitutional limit; that during none of such time has the assessed value of property in the city exceeded $12,656,783, nor the aggregate indebtedness been less than $559,704. A judgment was rendered upon the pleadings in favor of the plaintiff in the action.

T. J. Walsh and Edward Horsky, for plaintiff in error.

Clayberg, Corbett & Gunn, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

It is contended that the contract between the city of Helena and the receiver of the water company is void—First, because it was entered into without asking for bids, as required by section 4807 of the Political Code of Montana; and, second, because the city was indebted beyond the constitutional limit when the contract was made,—and that, even if the contract is not void, the judgment could not lawfully be rendered against the city, because it was indebted beyond the constitutional limit at the time when the indebtedness became due. The constitution of Montana, which was in force when the contract was made, provides as follows (article 13, § 6):

"No city, town, township or school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding three per centum of the value of the taxable property therein, to be ascertained by the last assessment for the state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such city, town, township or school district shall be void."

From the pleadings it appears that at the time of making the contract, and ever since, the actual indebtedness exceeded $559,000, whereas the permitted indebtedness was no more than $379,703.49. Did the amount due, and for which judgment was recovered, constitute an indebtedness against the city, within the meaning of that term as it is used in the constitution? The question has heretofore been twice presented to the supreme court of Montana. The case of Davenport v. Kleinschmidt, 6 Mont. 502, 13 Pac. 249, involved the validity of a contract for a water supply made by the city of Helena. The charter of the city at that time prescribed "that said city shall not be authorized to incur any indebtedness on behalf of said city for any purpose whatever to exceed the sum of $20,000." At the time of making the contract the bonded indebtedness of the city was $19,500, and its floating debt, consisting of outstanding warrants, was $15,000. The court held that no further indebtedness could be incurred until some of the outstanding debt had been discharged. In reaching that conclusion the court considered the nature of the obligation incurred by the city for its annual supply of water, and held that it was an indebtedness, within the meaning of the provision of the charter. It distinguished that case from cases in which a special provision had been made for levying a special tax to meet water rental, as in the case of Water Co. v. Woodward, 49 Iowa, 61, and said:

"In all of the water cases arising in the state of Iowa, we are met with the general statute which authorizes all cities to contract for the erection of waterworks, and to pay for the water used by a special fund raised by a special annual tax not to exceed five mills on the dollar. Such contracts with water companies were held not to create a debt against the cities, because the water companies could never have any general claim against cities, but were held to look to the special fund alone."

After the decision was rendered in that case an act was passed by the legislature of Montana providing for the levy of a special tax of 1½ per cent. upon the assessable property to create a special fund for the payment of bills for fire and water.    While that statute was in force, and while Montana was still a territory, the city of Great Falls entered into a contract for the supply of water; and in the case of State v. City of Great Falls, 19 Mont. 518, 49 Pac. 15, the question arose whether the liability so incurred was an indebtedness, within the meaning of the act of congress limiting the indebtedness of municipal corporations in the territories.    The act of congress provided as follows:

"That no political or municipal corporation, county, or other subdivision in any of the territories of the United States, shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per centum on the value of the taxable property within such corporation, county, or subdivision, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness."    24 Stat. 171.

The court said:

"The contract was entered into in contemplation of a special fund being created by the city to meet liabilities incurred thereunder, and the legislature, in said act, contemplated at the time that cities of the territory should pay for water used by them for sewerage and fire purposes from taxes levied and collected for that specific purpose.    The case of Davenport v. Kleinschmidt, supra, does not disapprove the Iowa cases, holding that, because a general law provided for payment from a special fund, a liability incurred by a city to supply its inhabitants with water was not a debt, in the sense of the term as employed in the constitution of Iowa.    *  *  *    It follows from this view of the case that neither under the organic act of the territory of Montana nor the constitution of the state of Montana is or was the liability incurred by the city of Great Falls under Ordinance 17 a debt, in the sense prohibited."

But when the Montana Codes were adopted, in the year 1895, the statute which controlled the decision in the Great Falls Case was repealed.    There was no longer a statute creating a special fund for the payment of water rentals.    The conditions again existed under which the ruling had been made in Davenport v. Kleinschmidt.    The provisions of the law which governed the city when the present indebtedness was incurred are the following (Pol. Code, § 4872):

"The council must, on the second Monday in August in each year, by resolution, determine the amount of city or town taxes for all purposes, to be levied and assessed on the taxable property in the town or city for the current year, and the city clerk must at once certify to the city treasurer a copy of such resolution, and the city treasurer must collect the taxes as in this article provided."

And Pol. Code, § 4814:

"The amount of taxes to be assessed and levied for general municipal or administrative purposes must not exceed one per centum on the assessed value of the taxable property of the city or town, and the council may distribute the money into such funds as are prescribed by ordinance."

Recurring to the two decisions of the Montana courts, it may be said, in brief, that Davenport v. Kleinschmidt is authority for the proposition that a liability incurred for water rental is a debt, within the prohibition of the statute, for it is payable out of the

general taxes levied and collected for the current expenses of the city, and that the Great Falls Case is authority for the proposition that such liability is not such an indebtedness, if express authority has been given the city to levy a special tax, and thus create a separate fund for the payment thereof. The defendant in error contends that the provisions of the general law of Montana governing cities at the time when the contract involved in the present case was entered into are equivalent to a provision for a special tax, and the creation of a special fund for the payment of water rental, for the reason that the council is given the authority to estimate the current expenses of each year, and to raise a general tax sufficient to meet them all, which would, of course, include rent for water, and because the ordinance under which the contract was made appropriates out of such general fund each year an amount sufficient to pay the annual sum which was agreed to be paid for water. It is argued that there is no difference between a fund arising from the levy of a special tax for fire and water purposes, and a fund appropriated for those purposes out of moneys received from taxes levied for general purposes. The same argument was applicable to the case of Davenport v. Kleinschmidt. The city of Helena, at the time when the contract was made in that case, had the power—as, indeed, have cities generally—to estimate its current expenses, and to include therein a tax for water and fire purposes. It also had the authority by ordinance to appropriate out of such taxes a sum sufficient to meet its contracts for such purposes. But those facts, in the opinion of the court, created no exception to the limitation of the charter. In the later case of the City of Great Falls the doctrine of Davenport v. Kleinschmidt was not questioned, but was approved. The Great Falls Case was distinguished from the former case on the ground which we have just indicated. Both cases are in harmony with the general doctrine established by the decided weight of authority,—that the contract of a municipal corporation for a useful and necessary thing, such as water or light, which is to be paid for annually as furnished, does not create an indebtedness for the aggregate sum of all the yearly payments since the debt of each year comes into existence only when the annual compensation has been earned, but that, if the amount agreed to be paid in any installment in compliance with such contract transcends the amount of permitted indebtedness, the city is not liable therefor. City of Walla Walla v. Walla Walla Water Co., 19 Sup. Ct. 77; Grant v. City of Davenport, 36 Iowa, 396; City of East St. Louis v. East St. Louis Gaslight & Coke Co., 98 Ill. 415; Merrill Railway & Lighting Co. v. City of Merrill, 80 Wis. 358, 49 N. W. 965; Prince v. City of Quincy, 105 Ill. 138; Foland v. Town of Frankton, 142 Ind. 546, 41 N. E. 1031; Smith v. Dedham, 144 Mass. 177, 10 N. E. 782; Wade v. Borough of Oakmont (Pa. Sup.) 30 Atl. 959. Such was the decision of this court, also, in the case of Keihl v. City of South Bend, 22 C. C. A. 618, 76 Fed. 921, where it was held that a contract entered into by a city at a time when the full amount of its permitted indebtedness had been incurred did not of itself create an indebtedness in con-

travention of the state constitution, but created a condition upon which such a debt might arise, and that the city was not liable for an annual installment thereunder which came due at a time when the city was taxed beyond the limit. In the case of City of Walla Walla v. Walla Walla Water Co., 19 Sup. Ct. 77, the supreme court had under consideration a provision of the charter of the city of Walla Walla, in the state of Washington, which limited the indebtedness of the city to the sum of $50,000. On March 15, 1887, an ordinance was passed granting to the water company for the period of 25 years the right to place and maintain mains and pipes in the streets of the city for the purpose of furnishing the inhabitants with water; the city to pay therefor each year the sum of $1,500. After the contract had been in force for about six years an ordinance was passed to provide for the construction of a system of waterworks to supply the city and its inhabitants with water. The water company brought suit to enjoin the infringement of its rights, and in its answer to the bill the city set up the defense that its contract with the water company was void because it created an indebtedness in excess of the charter limitation. The supreme court, after reviewing the authorities, said:

"But we think the weight of authority, as well as of reason, favors the more liberal construction that a municipal corporation may contract for a supply of water or gas, or a like necessary, and may stipulate for the payment of an annual rental for the gas or water furnished each year, notwithstanding the aggregate of its rentals during the life of the contract may exceed the amount of the indebtedness limited by the charter. There is a distinction between a debt and a contract for a future indebtedness to be incurred provided the contracting party perform the agreement out of which the debt may arise. * * * The obvious purpose of limitations of this kind in municipal charters is to prevent the improvident contracting of debts for other than the ordinary current expenses of the municipality. It certainly has no reference to debts incurred for the salaries of municipal officers, members of the fire and police departments, school teachers, or other salaried employés, to whom the city necessarily becomes indebted in the ordinary conduct of municipal affairs, and for the discharge of which money is annually raised by taxation. For all purposes necessary to the exercise of their corporate powers, they are at liberty to make contracts, regardless of the statutory limitation,—provided, at least, that the amount to be raised each year does not exceed the indebtedness allowed by the charter. Among these purposes is the prevention of fires, the purchase of fire engines, the pay of firemen, and the supply of water by the payment of annual rentals therefor."

In that decision the supreme court construed no more liberally the powers of municipal corporations to enter into contracts for supplies of necessaries than did this court in Keihl v. City of South Bend. It will be noted that in the language of the opinion so quoted a limitation is placed upon the extent of the indebtedness which may be incurred in the face of the statutory prohibition. Cities are declared to be at liberty to make certain kinds of contracts, regardless of the limitation, provided "that the amount to be raised each year does not exceed the indebtedness allowed by the charter." The present case does not meet the requirement of the test so established. The amount to be raised each year under the contract between the city and the receiver exceeded the total indebtedness allowed by the law of Montana. At the time when the debt for which this suit was brought was contracted, and when

it fell due, the city was indebted in an amount largely in excess of the statutory limit. As the judgment must be reversed upon this ground, it becomes unnecessary to consider the other question which the record presents. The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with the foregoing opinion.