STATE EX REL. HELENA WATER WORKS CO., APPELLANT, *v.* CITY OF HELENA ET AL., RESPONDENTS.

[No. 1546.]

[Submitted June 25, 1900. Decided December 17, 1900.]

*Municipal Corporations—Indebtedness—Constitutional Limitation—Contracts Exceeding—Validity—Appropriation to Pay—Notice of Limit—Mandamus.*

1.  A city had already exceeded the constitutional limit of indebtedness. A water company furnished it water for fire, sewerage and other municipal purposes under an ordinance providing for the obtaining of water for such purposes for a certain period, at a certain price, payable monthly, appropriating out of the city's yearly revenues sufficient money to pay for it, and ordering the city council for such term to levy annual taxes sufficient to meet the appropriation, under the Political Code of the state authorizing the levy of taxes for general purposes. *Held,* that the company could not recover for water so furnished, under Constitution, Art. XIII, Sec. 6, providing that no city shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding 3 per centum of the taxable property therein, since, as the liability of the city would be general and not special thereunder, the contract entered into created, and the amount due for water furnished thereunder constitutes, an indebtedness within the prohibition of the Constitution.
2.  The fact that the city council, in accordance with Political Code, Sec. 4874, providing that the city council must at a certain time pass an annual appropriation ordinance sufficient to defray the expenses or liabilities of the city for the ensuing year, specifying the amount for each object, appropriated a sum to pay for water furnished under such contract, does not make the city liable therefor, since the contract out of which the liability arose is void, and no lawful authority to pay it exists.
3.  Where the liability of a city under a contract is general, and not special, if there is no limit to the amount for which such city can become indebted for a failure on the part of the city to meet its obligations under the contract as they fell due, the other party can recover a general judgment against the city, and have a *mandamus* for the levy and collection of a tax to pay it.
4.  Where the powers of a city to incur indebtedness are limited, it is the duty of one who makes a contract with such a city, whereby an indebtedness is created, to take notice of the financial condition of the city, and to determine whether the proposed indebtedness exceeds the constitutional limitation, and, not having done so, he cannot recover where the city is already indebted beyond that limit.

*Appeal from District Court, Lewis and Clarke County; S. H. McIntire, Judge.*

APPLICATION by the State of Montana, on the relation of the Helena Water Works Company for a writ of *mandamus* against the city of Helena and the city council of the city of Helena. From a judgment on the pleadings in favor of defendants, plaintiff appeals. Affirmed.

### STATEMENT OF THE CASE.

The appellant, in the district court of Lewis and Clarke county, made an application for a writ of *mandamus* requiring the city of Helena, and the city council of the city of Helena, to audit, allow and pay certain claims for water furnished to said city during and since the month of May, 1898, under the terms of an ordinance passed by the city council of the city of Helena on the 17th day of August, 1897, and also requiring the city and said city council to appropriate sufficient of the tax levied in the year 1899 to pay the amount due and to become due under said ordinance for water furnished during the fiscal year commencing the first Monday in May, 1900.

The facts are substantially as follows: On the 16th day of March, 1897, in a suit then pending in the Circuit Court of the United States in and for the district of Montana, one James H. Mills was appointed receiver of the water plant owned and operated by the Helena Consolidated Water Company, and used for the purpose of supplying the city of Helena and the inhabitants thereof with water. On August 17, 1897, as stated above, the city council of the city of Helena duly passed Ordinance No. 367, entitled "To provide the city of Helena with water for fire, sewerage and other municipal purposes for a period of five years from August 1st, 1897." Among other things, said ordinance provided that James H. Mills, as receiver of the Helena Consolidated Water Company, should furnish to the city of Helena, for a period of five years from the 1st day of August, 1897, an ample and sufficient supply of good, pure, wholesome and clear water for fire,

sewerage and other municipal purposes.   The consideration for the water so furnished was the sum of $1,500 per month, payable on or before the 10th day of each month, for water furnished during the preceding month.   Section 11 of said ordinance is as follows:

"There is hereby appropriated out of the yearly revenues of said city of Helena, for the use and benefit of said receiver, during the full term of five years from and after the first day of August, A. D. 1897, the sum of fifteen hundred dollars per month for the use of water through the present existing hydrants, by said city, for the purpose of fire, sewerage and other municipal purposes; and the further sum of five dollars and eighty-three cents per month per hydrant for each and every hydrant hereafter ordered to be erected by said city council for the use of water through the same for fire, sewerage and other municipal purposes.   And it is hereby made the duty of said city council during the term of five years to levy annual taxes under the provisions of the Political Code of the State of Montana authorizing the levy of taxes for general purposes, sufficient in amount to meet the appropriations hereby made."

Said ordinance further provided that within 30 days after the passage thereof said receiver should file with the city clerk an acceptance in writing of all the terms and conditions thereof, and that immediately thereafter said ordinance should become effectual as a contract between the city and said receiver, for the purposes and upon the terms and conditions named therein.   It appears from the petition that within said period of 30 days said James H. Mills, as receiver, filed his acceptance in writing of the terms and conditions of said ordinance. It further appears that since the acceptance of said ordinance water has been furnished to the city of Helena in accordance with the terms thereof, and has been used by said city for the purposes mentioned therein.   It also appears that nothing has been paid for water furnished since the 1st day of May, 1898.

It is alleged in the petition that the said city of Helena levied

a tax for general municipal and administrative purposes sufficient in amount to meet and discharge the appropriation made in said ordinance for the fiscal year beginning with the first Monday in May, 1898, together with all other liabilities and expenses of said city for said year; that a like tax was levied by the city council for the fiscal years commencing with the first Monday in May, 1899, and 1900, respectively, in each instance sufficient in amount to pay and discharge the appropriation made by said ordinance for each of said years, together with the other liabilities and expenses of the city. It is alleged that each year since the passage, approval, and acceptance of said ordinance the said city council has appropriated in the annual appropriation ordinance the sum of $18,000 to pay for water furnished under said ordinance. Then follows an allegation that the water plant and system of appellant is the only one in the city of Helena, and that no other person or corporation was, either at the time of the passage or acceptance of said ordinance, or long prior thereto, or is now, in a position to furnish water to said city of Helena for the purposes specified in said ordinance.

The amended answer to the petition consisted of denials of certain allegations contained therein, certain allegations not now material, and seperate defenses in substance as follows:

(1)    That no bids were ever asked for or received prior to entering into the alleged contract between the said city and said James H. Mills, receiver, predecessor in interest of appellant; that no bids for entering into said alleged contract were ever asked or advertised for as required by the provisions of Article I of Chapter XVI, relating to contracts, of the Revised Ordinances of 1897 of said city of Helena; and that when said contract was entered into a contract could have been made with responsible parties, who would have agreed within six months thereafter to supply the said city with water for the purposes mentioned in said ordinance, from sources other than those owned or controlled by the appellant.

(2)    That at the time the city entered into said contract, and during all of the year 1897, as shown by the last assess-

ment for state and county taxes, the value of the taxable property in the city of Helena did not exceed the sum of $12,-656,783, and that it has not at any time since exceeded such sum; that at the time said contract was entered into, and at all times since, the aggregate indebtedness of the city was, and still is, largely in excess of the 3 per centum of the value of the taxable property therein, as shown by all the assessments for state and county taxes made during any of the times mentioned in said petition, and was at all of said times, and still is, in excess of the sum of $516,000.

To the amended answer a replication was filed. Defendant moved for judgment on the pleadings, which motion was by the court sustained. From the judgment entered upon said order, this appeal is taken.

*Messrs. Clayberg & Gunn* and *Mr. H. G. McIntire*, for Appellant.

*Mr. Edward Horsky*, for Respondents.

**MR. JUSTICE WORD,** after stating the case, delivered the opinion of the Court.

The first question we shall consider is: Did the city of Helena, by entering into the contract for a water supply, incur an "indebtedness," within the meaning of that term as it is used in Section 6 of Article XIII of the Constitution of Montana?

Section 6 of Article XIII of the Constitution is as follows:

"No city, town, township or school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding 3 per centum of the value of the taxable property therein, to be ascertained by the last assessment for the state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such city, town, township or school district shall be void; *provided, however*, that the leg-

islative assembly may extend the limit mentioned in this sec-
tion, by authorizing municipal corporations to submit the
question to a vote of the taxpayers affected thereby, when
such increase is necessary to construct a sewerage system or
to procure a supply of water for such municipality, which
shall own and control said water supply and devote the reve-
nues derived therefrom to the payment of the debt.''

It is admitted by the pleadings that at the time when the
contract between James H. Mills, receiver, and the city of
Helena was executed the city of Helena was indebted in a sum
in excess of 3 per centum of the assessed valuation of the tax-
able property in said city, as ascertained by the last assess-
ment prior thereto for state and county taxes.

In the court below counsel for defendants took the position
that the city, thus indebted, by entering into said contract,
created an indebtedness within the prohibition of the Consti-
tution.   In support of this position, the case of *Davenport et
al.* v. *Kleinschmidt et al.*, 6 Mont. 502, 13 Pac. 249, among
others, was cited.   In view of the fact that the respondents
claim that this decision is conclusive of the questions here
presented, and inasmuch as the appellant seeks to show that
this case has been overruled, or, at least, should not, in the
light of the facts here presented, be held to control the de-
cision upon this appeal, we will examine the case of *Daven-
port et al.* v. *Kleinschmidt et al.*, and seek to determine if any
of the questions therein decided are the same as those now
presented.

The suit of *Davenport et al.* v. *Kleinschmidt et al.* was one
for a perpetual injunction, brought against the mayor and
aldermen of the city of Helena and George F. Woolston, to
restrain them from carrying out a certain contract, alleged to
be illegal, by laying water mains, or erecting hydrants in the
city, or by issuing any warrants for any water supplied to
said city under said contract.   Passing over those portions of
the opinion given up to matters not now material, we come to
a question like unto the one now before us.   We quote as
follows:   ''But in such a contract as that proposed by the

ordinance in controversy actually forbidden by the charter of the city, as is contended by the respondents? Let us examine the charter, for the purpose of pointing out the precise section imposing the restriction. It is therein prescribed 'that said city shall not be authorized to incur any indebtedness on behalf of said city, for any purpose whatever, to exceed the sum of $20,000.' Section 17, as amended by the Act of 1883 (page 19, Charter). The allegations of the complaint, which, for the purpose of this case, are for the present taken as true, show the present bonded indebtedness of the city to be $19,-500, and the floating debt, consisting of outstanding warrants, to be $15,000. No distinction is drawn in the charter between bonded debt and floating debt, and, from the figures presented, it clearly appears that the limit has been already reached, and that the city cannot incur any further indebtedness, until some of that outstanding has been discharged, or the limit enlarged by the legislature. Then if, by entering into the proposed contract, the city council would 'incur an indebtedness,' the same is plainly prohibited by the express terms of the charter." The Court then goes on to interpret the term "indebtedness" as used in the city charter, and exhaustively reviews the decisions of Iowa, Illinois and Indiana, wherein the meaning of constitutional provisions practically the same as those of Section 6 of Article XIII of the Constitution of Montana is determined, and reaches the conclusion that the contract before the Court involved a liability to pay money on a contingency morally sure to take place, irrespective of any action taken, or option exercised, by the city in the future, and so constituted an indebtedness such as was prohibited by the express terms of the charter. Among other cases cited from and commented on by the Court in reaching this conclusion were; *Burlington Water Co.* v. *Woodward,* 49 Iowa 59, and *Grant* v. *City of Davenport,* 36 Iowa 401. Counsel for appellant contend that these decisions were misinterpreted by the Court in *Davenport et al.* v. *Kleinschmidt et al.,* and so, when carefully considered, do not support the conclusion drawn therefrom. Let us see if this is so. The Supreme

Court of Iowa in *Burlington Water Co.* v. *Woodward, supra,*
construing a constitutional provision almost identical with our
own says: ''It is believed the constitution applies not only
to a present indebtedness, but also to such as is payable on a
contingency at some future day, or which depends on some
contingency before a liability is created.  But it must appear
that such contingency is sure to take place, irrespective of any
action taken, or option exercised, by the city in the future.
That is, if a present indebtedness is incurred, or obligations
assumed, which, without further action on the part of the city,
have the effect to create an indebtedness at some future day,
such are within the inhibition of the constitution.  But if the
fact of the indebtedness depends upon some act of the city, or
upon its volition, to be exercised or determined at some future
date, then no present indebtedness is incurred, and none will
be until the period arrives, and the required act or option is
exercised, and from that time only can it be said there exists
an indebtedness.''  Commenting on the above, this Court in
*Davenport et al.* v. *Kleinschmidt et al.* held that case analo-
gous to the one then before it.  Such, in our opinion, is true,
in view of the conclusions reached; for it is to be noted that
the Iowa decisions are in accord with the views expressed in
*Davenport et al.* v. *Kleinschmidt et al.,* to this extent, at
least, that a contract for a water supply entered into by a city
which has already exceeded the constitutional limit of indebt-
edness, and which water supply such city is not able to pay
for out of its current revenues, together with its other cur-
rent expenses, is a contract within the prohibition of the con-
stitution.  The Iowa court, however, goes further, and holds
''that when the contract made by the municipal corporation
pertains to the ordinary expenses, and is, together with other
like expenses, within the limit of its current revenues, and
such taxes as it may legally and in good faith intend to levy
therefor, such contract does not constitute 'the incurring of
indebtedness' within the meaning of the constitutional pro-
visions.''  (*Grant* v. *City of Davenport, supra.*)  But this
Court in *Davenport et al.* v. *Kleinschmidt et al.* refused to

adopt the construction of this constitutional prohibition against incurring indebtedness, though urged upon its attention by counsel, but, on the contrary, approved the construction given by the courts of Illinois and other states to·a constitutional provision practically the same as our own.

It is said that in *Davenport et al.* v. *Kleinschmidt, et al.* it did not appear, as it does from the pleadings in the case at bar, that for each year since the making of the contract the city had levied and collected taxes in an amount sufficient to make the payments provided for in said contract, and to meet all the other liabilities and expenses of the city; but the authorities cited and approved by the court passed upon a like contention, and held it to be against the plain meaning of the constitution, and so without merit.    Thus, in *City of Springfield* v. *Edwards*, 84 Ill. 626, the court say:    ''Appellant contends that when liabilities are created and appropriations are made which are within the limits of the revenue accruing to meet them, they are not 'debts,' within the meaning of the prohibition of the Constitution; and that temporary loans are not, when within the limits of the revenue expected to be realized. The first branch of this position has support in *Grant* v. *City of Davenport*, 36 Iowa, 396; *People* v. *Pacheco*, 27 Cal. 175; *Koppikus* v. *Capitol Commissioners*, 16 Cal. 253; *State* v. *McCauley*, 15 Cal. 455; *State* v. *Medbery*, 7 Ohio St. 522: and *State* v. *Mayor, etc., of City of New Orleans*, 23 La. Ann. 358.    These cases maintain the doctrine that revenues may be appropriated in anticipation of their receipt, as effectually as when actually in the treasury; that the appropriation of moneys when received meets the services as they are rendered,— thus discharging the liabilities as they arise, or rather anticipating and preventing their existence.    In considering what construction shall be given to a constitution or a statute, we are to resort to the natural signification of the words employed, in the order and grammatical arrangements in which they are placed; and if, when thus regarded, the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the instrument, then such

meaning is the only one we are at liberty to say was intended to be conveyed. There is no difficulty in ascertaining the natural signification of the words employed in the clause of the constitution under consideration, and to give them that meaning involves no absurdity or contradiction with other clauses of the constitution. The prohibition is against becoming indebted,—that is, voluntarily incurring a legal liability to pay,— '*in any manner or for any purpose,*' when a given amount of indebtedness has previously been incurred. It could hardly be probable that any two individuals of average intelligence could understand this language differently. It is clear and precise, and there is no reason to believe the convention did not intend what the words convey. A debt payable in the future is obviously no less a debt than if payable presently; and a debt payable upon a contingency, as upon the happening of some event, such as the rendering of service or the delivery of property, etc., is some kind of a debt, and therefore within the prohibition. If a contract or undertaking contemplates, in any contingency, a liability to pay, when the contingency occurs, the liability is absolute,—the debt exists,—and it differs from a present, unqualified promise to pay only in the *manner* by which the indebtedness was incurred. And, since the *purpose* of the debt is expressly excluded from consideration, it can make no difference whether the debt be for necessary current expenses or for something else.'' And, as if these propositions did not cover the question, the court went further, and held it unlawful for a city indebted beyond the constitutional limit to incur a liability for current expenses or for anything else, even though it should at the same time make a formal appropriation, within the limits of its revenue, to meet it; that to avail itself of current, but uncollected, revenue for such purpose it must go further, and assign the amount out of a tax actually levied, and without recourse, in such a manner as to ''leave upon the city no future obligation, either absolute or contingent, whereby its debt might be increased.'' (*Prince* v. *City of Quincy,* 128 Ill. 443, 21 N. E. 768.)

In *Law* v. *People*, 87 Ill. 385, the case of *City of Spring-field* v. *Edwards*, *supra*, is approved, the propositions above quoted therefrom are affirmed, and it is there declared that the inhibition of the constitution includes ''indebtedness'' of every kind and character, and in every sense of the term, no matter what the form by which it is evidenced may be, when contracted or issued after the statutory limit is reached.

In *Buchanan* v. *City of Litchfield*, 102 U. S. 278, 26 L. Ed. 138, and *City of Litchfield* v. *Ballou*, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132, the construction placed upon that section of the Illinois constitution before the court in *City of Springfield* v. *Edwards*, and *Law* v. *People*, *supra*, is approved. In the latter case, Mr. Justice Miller, speaking for the court, says: ''The language of the constitution is that no city, etc. 'shall be allowed to become *indebted in any manner or for any purpose* to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of its taxable property.' It shall not *become indebted*. Shall not incur any pecuniary liability. It shall not do this in *any manner*. Neither by bonds, nor notes, nor by express or implied promises. Nor shall it be done for any *purpose*. No matter how urgent, how useful, how unanimous the wish. There stands the existing indebtedness to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt, in any manner, or for any purpose whatever. If this prohibition is worth anything, it is as effectual against the implied as the express promise, and is as binding in a court of chancery as a court of law.'' Such was the interpretation by the highest court in the land of this constitutional provision of the state of Illinois when our own Constitution containing a like provision was adopted.

We have carefully examined those sections of our Constitution wherein counsel for appellant claim an interpretation of the term ''indebtedness,'' as used in the constitution, may be found. The sections cited are by their terms applicable to the state alone. By them the limit of state indebtedness is fixed, as is the limit of taxation as well. In the case of cities,

etc., the limit of indebtedness is fixed by the constitution, but the limit of taxation is fixed by the Code, and so subject to change. Why cities, etc., were not included within the terms of Section 2, of Article XIII, and Section 12, of Article XII, we need not pause to inquire, since we find as to them an express provision, the meaning of which is now before us for determination. Nothing is said in the constitution as to the manner in which a city shall meet its current expenses. The inhibition is against a city becoming indebted in any manner or for any purpose to an amount exceeding a certain per cent. of its taxable property.

In view of these holdings, we can conceive of no possible ground for the supposed distinction between an indebtedness for current expenses, payable out of the current revenues, and one for the payment of which no provision has been made, and for which the city is generally liable. (See, also, *Fuller* v. *City of Chicago*, 89 Ill. 282; *Fuller* v. *Heath*, *Id.* 296; *Howell* v. *City of Peoria*, 90 Ill. 104; *Prince* v. *City of Quincy*, 105 Ill. 138; *City of Chicago* v. *McDonald* 176 Ill. 404, 52 N. E. 982; *City of Helena* v. *Mills*, 36 C. C. A. 1, 94 Fed. 916; *Beard* v. *City of Hopkinsville*, 95 Ky. 239, 24 S. W. 872, 23 L. R. A. 402; *Spillman* v. *City of Parkersburg*, 35 W. Va. 606, 14 S. E. 279; *People ex rel. Seeley* v. *May*, 9 Colo. 404, 12 Pac. 839; *Niles Waterworks* v. *City of Niles*, 59 Mich. 311, 26 N. W. 525; *Sackett* v. *City of New Albany*, 88 Ind. 473; *Ming* v. *Pratt*, 22 Mont. 262, 56 Pac. 279; *Jay* v. *School Dist.* 24 Mont. 219, 61 Pac. 250.)

Counsel for appellant next contend that, even if this court is of opinion that the case of *Davenport et al.* v. *Kleinschmidt, et al.* supports the proposition that, by entering into the contract now before us, the city incurred an indebtedness such as is prohibited by the constitution, yet that case cannot be looked to as an authority, for the reason that it has been overruled by the case of *State ex rel. Great Falls Water Works* v. *City of Great Falls*, 19 Mont. 518, 49 Pac. 15. We do not so read this last case. At the time the contract before the court in the Great Falls case was entered into there existed an act

of the legislature conferring upon cities the power to levy and
collect a tax, not to exceed five mills on the dollar, for fire and
water purposes. The court said: "This law was in force
when Ordinance No. 17 was passed, approved, and accepted.
We are of the opinion that this law became a part of the
contract embodied in said ordinance, and that relator had a
right to insist that, in so far as might be necessary to pay
what was due it for hydrant rentals in accordance with rates
prescribed in the ordinance contract, a special tax, as provided
for in that act, should be levied annually; of course, in only
such sums as would be needed, and not exceeding the five mill
limit. The contract was entered into in contemplation of a
special fund being created by the city to meet liabilities in-
curred thereunder, and the legislature in said act contemplated
at the time that cities of the territory should pay for water
used by them for sewerage and fire purposes from taxes levied
and collected for that specific purpose. The case of *Daven-
port et al.* v. *Kleinschmidt, et al. supra*, does not disapprove
the Iowa cases holding that, because a general law provided
for payment from a special fund, a liability incurred by a city
to supply its inhabitants with water was not a 'debt,' in the
sense of the term as employed in the constitution of Iowa,
forbidding cities to incur debts in excess of a certain propor-
tion of their assessable property. It was under different con-
ditions of law and fact that the Supreme Court of the Territory
of Montana held in *Davenport et al.* v. *Kleinschmidt et al.*
that the liability incurred by the city of Helena under its or-
dinance contract was a debt. This appears from a careful
reading of the case."

The case of *Davenport et al.* v. *Kleinschmidt et al.* and the
Great Falls case stand for two different and distinct principles.
The first is an authority for the proposition that when a mu-
nicipality has exceeded the constitutional limit of indebtedness
a contract for a water supply, under which the city is liable
generally, is the incurring of an indebtedness, within the mean-
ing of the constitution, and the Great Falls case is an author-
ity for the proposition that such a contract does not create an

indebtedness when the city making the contract is authorized by law to levy a special tax expressly for the payment of such contract liability. In a case falling within the first class, the liability of the city is general, and is payable out of all its revenues; thus, in the case at bar, Section 11 of the ordinance makes it the duty of the "city council during the term of five years to levy annual taxes under the provisions of the Political Code of the state of Montana authorizing the levy of taxes for *general purposes*, sufficient in amount to meet the appropriations hereby made," which, as appropriated by the same section, is the sum of $1,500 per month for water furnished. In cases falling within the second class, the liability is special, and is limited to the amount of the special tax the levy of which is expressly authorized by law. So it may be said that the Great Falls case approves, rather than overrules, the case of *Davenport et al.* v. *Kleinschmidt et al.* (See *City of Helena* v. *Mills, supra* ) And it may be here noted that since the decision of the Great Falls case the special tax for fire and water purposes therein considered has been abrogated by the adoption of the Codes, and the same conditions are now presented as existed at the time the case of *Davenport et al.* v. *Kleinschmidt et al.* was decided. ( *City of Helena* v. *Mills, supra.* )

Counsel for appellant contend that the conclusions reached by this Court in *Davenport et al.* v. *Kleinschmidt et al.* are in conflict with the decision of the Supreme Court of the United States in *City of Walla Walla* v. *Walla Walla Water Co.* 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341. With this we cannot agree. In the first place, it appears from a reading of the opinion in the Walla Walla Case that at the time the bill in equity was filed, and the preliminary injunction against the city was granted the city of Walla Walla was *not* indebted to an amount in excess of the limit of indebtedness fixed in its charter. Commenting on limitations of this character, the court in the Walla Walla case say: "The obvious purpose of limitations of this kind in municipal charters is to prevent the improvident

contracting of debts for other than the ordinary current expenses of the municipality. It certainly has no reference to debts incurred for the salaries of municipal officers, members of the fire and police departments, school teachers, or other salaried employes to whom the city necessarily becomes indebted in the ordinary conduct of municipal affairs, and for the discharge of which money is annually raised by taxation. For all purposes necessary to the exercise of their corporate powers, they are at liberty to make contracts regardless of the statutory limitation, provided, at least, that the amount to be raised each year does not exceed the indebtedness allowed by the charter. Among these purposes is the prevention of fires, the purchase of fire engines, the pay of firemen, and the supply of water by the payment of annual rentals therefor. It is true that in the case of *Lake Co.* v. *Rollins*, 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060, it was held by this Court that a similar provision in the constitution of Colorado was an absolute limitation upon the power to contract any and all indebtedness, including warrants used for county expenses, such as for witness and jurors' fees, election costs, charges for board of prisoners, county treasurers' commissions, etc. But the case is readily distinguishable from the one under consideration. That was a suit against a county upon a large number of warrants for current expenses, the defense being a want of authority on the part of the county commissioners to issue warrants which had been put forth after the limit of indebtedness had been reached and even exceeded. They were held to be void. The case is authority for the proposition that if the annual rentals, payable in this case, with the other expenses, exceeded the limit of indebtedness, the transaction would be void; but as it appears that the limit of indebtedness was $50,000, and the amount of the city debt but $16,000, it is clear that the payment of an annual rental of but $1,500 would be unobjectionable upon this ground. If such annual rentals exceeded the limit of indebtedness, a different question would be presented.''

The Walla Walla Case is an authority for the proposition

''that the contract of a municipal corporation for a useful and necessary thing, such as water or light, which is to be paid for annually as furnished, does not create an indebtedness for the aggregate sum of all the yearly payments, since the debt of each year comes into existence only when the annual compensation has been earned, but that, if the amount agreed to be paid in any installment in compliance with such contract transcends the amount of permitted indebtedness, the city is not liable therefor.'' (*City of Helena* v. *Mills, supra,* and cases cited.) With the city already indebted when the contract before us was made, in a sum largely in excess of the constitutional limit, how can it be said that the amount to be raised each year under the contract does not exceed the amount of indebtedness permitted by our Constitution? *A fortiori* is this true when the water rent and the other expenses of the city for each year are taken together, as they must be, under our understanding of the Constitution.

If, by entering into the contract before us, an indebtedness was not created, what was the purpose of section 11 of the ordinance, wherein the city bound itself during the term of five years to levy annual taxes under the provisions of the Political Code authorizing the levying of taxes for general purposes to pay for water supplied under the contract? It may well be said that this obligation in itself implies the existence of a debt in favor of appellant and against the city.

It follows, from the view we have taken of the propositions before us, that the question asked in the beginning of this opinion must be answered in the affirmative.

2. The next question presented for our consideration is this: Does the amount now due and unpaid for water furnished to the city under the contract before us constitute an ''indebtedness'' within the meaning of the term as used in that section of the Constitution above considered? This question is virtually answered by the conclusion we have already reached. Holding, as we do, that the contract itself is void, any obligation flowing from it is void also. This view accords with that portion of Section 6 of Article XIII, *supra*,

wherein it is declared ''that all bonds or obligations in excess of such amount (the limit of indebtedness) given by or on behalf of such city,'' etc., ''shall be void.'' Nor can it make any difference, in our opinion, that the city council, in accordance with the provisions of Section 4874 of the Political Code or otherwise, appropriated $18,000 or other sum to pay for water furnished under said contract for a given year. The contract out of which these liabilities arose being void, it necessarily follows that no lawful authority to pay them exists. As we have indicated, the liability of the city under the contract before us, if any existed, would be general, not special, and, were there no limit to the amount for which the city could become indebted, for a failure on the part of the city to meet its obligations for water rent as they fell due, the appellant could recover a general judgment against the city, and have a *mandamus* for the levy and collection of a tax to pay it.

Counsel for appellant say that the logical result of holding that the Constitution prohibits a contract for current expenses which a city can meet out of its current revenues together with its other current expenses is that the city government must end,—that the city cannot pay one dollar out of its treasury for the necessities to sustain corporate life. Were it true that such dire results would flow from giving force to the plain terms of the Constitution, it were better so than that this Court should, by a loose construction of that instrument, endanger those sacred rights which by its terms are guarantied to all the people. (*Palmer* v. *City of Helena*, 19 Mont. 68, 47 Pac. 209.) But that no such results need follow from the construction we give to this provision of our Constitution is made plain by a consideration of the course pursued in those states where a like interpretation of a similar constitutional provision is adhered to. ''The effect of this constitutional inhibition is to require cities indebted to the limit fixed by the constitution to carry on their corporate operations, while so indebted, upon the cash or pay as you go plan, and not upon credit, to any extent or for any purpose.'' (*Prince* v. *City*

*of Quincy*, 128 Ill. 443, 21 N. E. 768.) A way in which, under such circumstances, the operations of a city may be carried on is pointed out in *City of Springfield* v. *Edwards*, *supra*; and in commenting thereon in *Law* v. *People*, *supra*, the court say: "The theory is that a corporation which has reached the constitutional limit of its power to create indebtedness may, when a tax is levied, but not collected, draw against the fund thus levied and provided, although not in the treasury, and thus appropriate and virtually assign, the amount specified in the warrant on the treasury to the person to whom it is issued and delivered, and that amount, being assigned or set apart to him, when collected, he has the right to receive, and it becomes the duty of the officers to collect and pay it to him; and, failing in their duty, he would have an action against them for its recovery. But, with a corporation thus situated, the legal effect of the issuing and receiving of the warrant is that the person receiving an assignment or appropriation of so much of the specific tax already levied, and against which the warrant is drawn, by receiving it discharges the corporation from all liability on account of the services or articles for which it is drawn, and agrees to look to the tax thus levied and appropriated, and to the officers, for his pay, and he thereby discharges the corporation from any and every kind of liability therefor. In such a case the warrant is given and received in full satisfaction for the services rendered or the material furnished." (See *Lake Co.* v. *Rollins*, and *People ex rel. Seeley* v. *May*, *supra*.

From the view we take of the question considered, it follows that the answer to the second question must also be in the affirmative. This makes it unnecessary for us to pass upon the other questions presented on this appeal.

It may be the decision of this case will work a hardship upon those whose money has been the means of supplying the city with water for the time disclosed by the pleadings. In this regard, "it is only necessary to say that the settled principles of law cannot, with safety to the public, be disregarded in order to remedy the hardships of special cases." (*Buchanan*

v. *City of Litchfield, supra*; *Sanford* v. *Gates, Townsend & Co.*, 21 Mont. 277, 290, 53 Pac. 749; *Lake Co.* v. *Rollins, supra.*) And in this connection it is to be observed that, where the powers of a city to incur indebtedness are limited, it becomes the duty of one who contracts with such a city, whereby an indebtedness is created, to take notice of the financial condition of the city, and to determine whether the proposed indebtedness is in excess of the constitutional limitation. (*French* v. *City of Burlington*, 42 Iowa, 617; *Buchanan* v. *City of Litchfield, supra.*)

The importance of this case, because of the questions and amount involved, and the rights necessarily to be determined, has led us to give it most careful consideration, and, after so doing, we are of opinion that the judgment of the court below should be affirmed; and it is so ordered.

*Affirmed.*